IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TODD CARTA | No. 07-12064-JLT |

## RESPONDENT'S MOTION *IN LIMINE* TO EXCLUDE HEARSAY EVIDENCE

### Introduction

Respondent Todd Carta respectfully moves to exclude certain hearsay evidence that the government has indicated it will attempt to introduce in the civil commitment proceeding against him. Specifically, the government has identified numerous exhibits that contain multiple levels of unreliable hearsay concerning, among other things, specific instances of alleged prior conduct including police reports, a Presentence Investigation Report, FBI criminal record excerpts, BOP incident/disciplinary reports, and medical and psychological records containing unattributed/undocumented personal "history."

Mr. Carta objects to the proposed exhibits because they are inadmissible under the Federal Rules of Evidence. They are and contain hearsay which does not fall within any hearsay exception, and they do not provide sufficient guarantees of trustworthiness to be admitted. Mr. Carta also objects to the proposed exhibits because their introduction will deny him his statutory right to confrontation under 18 U.S.C. § 4248(c) and because their introduction will deny him due process of law guaranteed by the United States Constitution.

## Argument

I. **THE GOVERNMENT'S PROPOSED EXHIBITS ARE NOT ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE.**

The government's proposed exhibits are inadmissible under the Rules of Evidence because they are hearsay and/or contain hearsay which does not fall within any hearsay exception and they do not provide sufficient guarantees of trustworthiness to be admitted.

    A. **The Government's Proposed Exhibits are Not Admissible Under the Public Records Exception.**

The government contends that their proposed exhibits are admissible as public records under Fed.R.Evid. 803(8), which provides:

> Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless sources of information or other circumstances indicate lack of trustworthiness.

Police reports and other "public" documents are inadmissible under Rule 803(8) for several reasons: 1) They are not matters personally observed by the author of the report; 2) they are not "factual findings" resulting from an investigation; 3) the sources of information or circumstances indicate a lack of trustworthiness; and 4) the public policy justification for exempting the rule from operating against the accused in criminal cases applies equally to the civil commitment context.

First, the statements are inadmissible under FRE 803(8)(B) because that exception applies only to matters "<u>observed</u> pursuant to duty imposed by law . . ." *Id*. (emphasis added). Thus,

the rule requires that the information memorialized in the report be personally observed by the author of the report - in this case the official who wrote the report. *See* JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE §803.10[3][a] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2006) ("concerning public records of activities performed or facts observed, the person who prepared the report is typically required to have personal knowledge of the activities or facts."). Thus, to the extent that the contents of the report contain anything other than a description of matters personally observed by an official, this exception is inapplicable.

The First Circuit has noted the distinction between matters personally observed by the author of the public record and matters observed by others which are then relayed to the author and subsequently memorialized within the record. The later is not admissible under the public records exception: "Hearsay statements by third persons are not admissible under public records exception merely because they appear in public records; they are hearsay within hearsay." *United States v. Mackey*, 117 F.3d 24, 28-29 (1st Cir. 1997) (FBI report detailing statement of witness not admissible under public records or business records exception). Other jurisdictions are in accord. *See Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (holding police report detailing statements of eyewitness to gas explosion not admissible in subsequent civil litigation and noting that "even if police report itself could be admitted under public records exception, statement of witness was hearsay."); *Reynolds v. Green*, 184 F.3d 589, 596 (6th Cir. 1999) (legislative investigator's report recording statements of inmate, his mother, and corrections officers was inadmissible, because this "hearsay within hearsay" was not covered by exceptions); *United States v. Sallins*, 993 F.2d 344, 347-348 (3d Cir. 1993) (even if record of 911 call was

admissible, details of call were inadmissible).   In this case, information relayed to law enforcement (whether a police officer, correctional officer, etc.) or public official by a complainant or other persons, which form the basis of allegations against Mr. Carta, could not possibly fall under the category of information personally observed by the official.  Because this type of information is necessarily "hearsay within hearsay", Rule 803(8)(B) is inapplicable.

Second, the government's exhibits are not admissible because they are not factual "findings" of a public agency charged with making those findings.  The hearsay exception in 803(8)(C) applies only to "evaluative reports," *i.e.*, reports based on some type of evaluative process.  The exception does not apply to reports which simply claim to memorialize witness statements or other data.  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988) (stating that "factual findings" means "factually based conclusions and opinions").   Statements which are merely taken by governmental investigators from witnesses and recorded are not "factual findings" within the meaning of Fed.R.Evid. 803(8)(C) since they do not result from any type of evaluative process.  *United States v. D'Anjou*, 16 F.3d 604, 610 (4th Cir. 1994) (holding that raw interview transcripts of witness interviews conducted by ATF were not admissible under Rule 803(8)(C) "since they are not findings resulting from any type of evaluative process whatsoever."); s*ee also United States v. Patrick*, 248 F.3d 11, 22 (1st Cir. 2001) (police notes not "findings of a public agency charged with making those findings"); *Miller v. Field*, 35 F.3d 1088 (6th Cir. 1994) (holding that investigatory report prepared by Michigan State Police in civil rights action by prisoner against correctional officials not admissible under 803(8)(C) because "the bulk [of the report] contains neither factual findings made by the report's preparers nor conclusions and opinions based upon such factual findings.  Instead the reports are largely a

recitation of statements of other individuals that fall under no exception to the hearsay rule."); *United States v. Ortiz*, 125 F.3d 630, 632 (8th Cir. 1997) (report which is essentially a transcript of what informant told DEA agent does not present "factual findings" which is what Rule 803(8)(C) makes admissible). In this case, the law enforcement officers' role was simply to gather information, including statements, and pass that information on to prosecuting attorneys for further action. The individual officers engaged in no administrative factfinding or evaluative process of the type envisioned by the Rule's drafters. Rule 803(8)(C) is accordingly inapplicable.

Moreover, the reports cannot be admitted under Rule 803(8)(C) if the sources of information or circumstances indicate a lack of trustworthiness. In assessing whether evaluative reports are trustworthy, a court may consider such factors as (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation. *Beech Aircraft Corp.*, 488 U.S. at 167 n. 11 (citing Advisory Committee's notes on Fed.Rule.Evid. 803(8)). Thus even assuming, solely for the sake of argument, that the reports and investigatory material at issue here could be considered "factual findings resulting from an investigation made pursuant to authority granted by law," they would still be inadmissible. In this case, the court has no information regarding the skill or experience of any of the myriad officials who authored the reports. There was no hearing held, and the reports -- by their very nature -- contain statements of interested persons prepared for the purpose of future litigation. "While clearly evaluative reports may rely upon hearsay in reaching conclusions, the fact that the report is based upon hearsay, particularly of an unreliable sort, is a factor cutting against admission." *United States v. Jackson-Randolph*, 282 F.3d 369, 381 (6th Cir. 2002) (finding that examiner's report relying on testimony of witness

with motive to lie was unreliable and therefore properly excluded); *Dallas & Mavis Forwarding Co. v. Stegall*, 659 F.2d 721, 722 (6th Cir.1981) (report relying on hearsay statement of potentially biased witness without physical evidence to corroborate conclusion properly excluded); *Faries v. Atlas Truck Body Mfg. Co.*, 797 F.2d 619, 622–24 (8th Cir.1986) (report based upon incomplete investigation and relying on hearsay statement of potentially interested eyewitnesses lacked trustworthiness); *Barlow v. Connecticut*, 319 F.Supp.2d 250, 258 (D.Conn. 2004) (excluding report because based largely on unreliable hearsay).

     Finally, Mr. Carta notes that FRE 803(8) does not apply to "matters observed by police officers and other law enforcement personnel" in criminal cases under 803(8)(B), nor does it allow the admission of "factual findings" against a defendant in a criminal case under 803(8)(C). Although Mr. Carta acknowledges that this Court has ruled that a civil commitment proceeding is not, strictly speaking, a criminal case, the rationale for precluding the admission of these documents against the defendant in a criminal case is equally applicable here. The Advisory Committee notes reflect that the drafters were specifically concerned with protecting the confrontation rights of the accused, noting "the almost certain collision with confrontation rights which would result from their use against the accused in a criminal case." *See* Advisory Committee's notes on Fed.Rule.Evid. 803(8). Facing a potentially indefinite civil commitment, Mr. Carta also has a right to confrontation, both statutory and Constitutional. Thus, these reports should not be admitted under the public records exception for the same policy reasons which preclude their admissibility against a defendant in a criminal case.

### B. The Government's Proposed Exhibits are Not Admissible Under the Residual Exception.

The government's contention that its proposed exhibits are admissible under the "residual" hearsay exception, Fed. R. Evid. 807, is also misplaced. This exception provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

The government's exhibits are not admissible under the residual hearsay exception because the documents are not of the type normally held to have guarantees of trustworthiness sufficient to justify "foregoing the rigors of in-court testimony (*e.g.,* live testimony under oath, cross-examination) that ordinarily guarantee trustworthiness." *United States v. Trenkler*, 61 F.3d 45, 58 (1st Cir. 1995). The residual exception was designed to address "exceptional circumstances" where evidence which did not technically fit into any of the enumerated hearsay exceptions was nonetheless found to have guarantees of trustworthiness equivalent to or exceeding the guarantees reflected by the enumerated exceptions. *See* S.Rep. No. 1277, 93d Cong.2d Sess., 20 (1974), reprinted in 1974 U.S.C.C.A.N. 7051, 7066. The residual exception was not intended "to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions" or "to authorize major judicial revisions of the hearsay rule" *Id.* Thus, in evaluating the applicability of this exception, a court considers whether the

"evidence shares reliability factors (*e.g.*, personal knowledge, lack of bias) common to the other hearsay exceptions . . and whether the evidence, but for a technicality, would otherwise come within a specific exception." *Trenkler*, 31 F.3d at 58 (holding error to admit data from law enforcement database compiled where government failed to establish that reports underlying the database possessed any guarantees of trustworthiness similar to those found in the enumerated hearsay exceptions); *see also United States v. Sposito* 106 F.3d 1042, 1048 (1st Cir. 1997) (holding that former immunized testimony of witness contained adequate guarantees of trustworthiness and was therefore admissible under residual hearsay exception because it was given under oath, and because witness was immunized, testified upon personal knowledge, and was subject to vigorous cross-examination); *United States v. Doe*, 860 F.2d 488, 481-492 (1st Cir. 1988) (Coast Guard telexes which contained official permission to board a vessel admissible under residual exception because "normal and regular procedures" under which the documents were produced provided guarantees of trustworthiness).

In this case the government's proffered evidence does not meet the criteria for admission under the residual exception. The evidence is not substantially similar to a specifically enumerated hearsay exception, as in *Doe*, above. It was not given under oath and subject to vigorous cross examination, as the evidence as issue in *Sposito*. Rather, the proffered evidence consists of various unsworn allegations which do not bear any similarity to any firmly rooted hearsay exception (e.g. dying declarations, statements against interest, former testimony). They do not contain any "particularized guarantees of trustworthiness". Indeed, the First Circuit has recognized that the types of allegations offered here are among the least reliable types of hearsay. *See Taveras*, 380 F.3d at 537, discussed *supra*.

The government may suggest that certain reports it intends to admit into evidence are trustworthy because "respondent was charged and pled guilty to the charges resulting from these reports providing evidence of trustworthiness." This argument fails for several reasons. First, Mr. Carta pled guilty to specific charges, not to police reports. While a charge may have arisen from an investigation which also produced a particular police report, a plea to a charge associated with a police report does not mean that the report accurately describes the factual basis for the plea entered  Second, even if the government could demonstrate a conviction, Mr. Carta would only be guilty of specific charges, not necessarily of all conduct reflected in underlying reports. While a charge may have arisen from an investigation which also produced a particular report, a plea to a charge associated with a police report does not mean that the report accurately describes the factual basis for the plea entered. The Supreme Court has recognized this distinction in *United States v. Shepard*, 544 U.S. 13 (2004). In that case the Court addressed the question of whether a police report was sufficiently reliable evidence for determining whether a defendant's crime had the specific characteristics needed to qualify it as a predicate for sentencing enhancement.[1] The Court held that a police report was not reliable evidence for this purpose, and limited a sentencing court to considering only facts which were incorporated within the defendant's plea and which the defendant necessarily adopted as a result of his plea, such as the charging document, written plea agreement, plea colloquy, and any explicit factual finding by the

---

[1]The specific question in *Shepard* was whether a sentencing court could look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted and supported a conviction for generic burglary. The Court held that it may not, and that a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented. *Shepard*, 544 U.S. at 16.

judge.

Finally, the Supreme Court has held that, for the purposes of the confrontation clause, hearsay evidence must possess indicia of reliability by virtue of its <u>inherent</u> trustworthiness, and not by reference to other evidence at trial. Thus, evidence corroborating the truth of a statement cannot alone support a finding that the statement bears the requisite particularized guarantees of trustworthiness. *See Idaho v. Wright*, 497 U.S. 805, 822 (1990) (holding corroboration alone does not satisfy the requirement of "particularized guarantees of trustworthiness" for purposes of the Confrontation Clause). In this case, the various reports the government seeks to admit contain no inherent guarantees of trustworthiness. The statements of the various persons memorialized in the reports are not sufficiently similar to statements admitted into evidence under an enumerated hearsay exception, and, as discussed above, there are no other circumstances which guarantee trustworthiness. That Mr. Carta allegedly pled guilty to a charge in a case in which the case file contains a police report cannot, in and of itself, provide particularized guarantees of trustworthiness. For these reasons, the government's proffered exhibits are inadmissible under the residual hearsay exception.

II. **MR. CARTA HAS A RIGHT TO CONFRONT THE WITNESSES AGAINST HIM PURSUANT THE DUE PROCESS CLAUSE AND 18 U.S.C. § 4248.**

   A. **The Due Process Clause Provides a Right to Confrontation in this Proceeding**.

The United States Supreme Court has recognized that civil commitment for any purpose is a significant deprivation of liberty that requires due process protection. *Addington v. Texas*, 441 U.S. 418, 425 (1979). The "fundamental requisite" of due process under the Fourteenth Amendment is the "opportunity to be heard . . . in a meaningful time and in a meaningful


judge.

Finally, the Supreme Court has held that, for the purposes of the confrontation clause, hearsay evidence must possess indicia of reliability by virtue of its <u>inherent</u> trustworthiness, and not by reference to other evidence at trial. Thus, evidence corroborating the truth of a statement cannot alone support a finding that the statement bears the requisite particularized guarantees of trustworthiness. *See Idaho v. Wright*, 497 U.S. 805, 822 (1990) (holding corroboration alone does not satisfy the requirement of "particularized guarantees of trustworthiness" for purposes of the Confrontation Clause). In this case, the various reports the government seeks to admit contain no inherent guarantees of trustworthiness. The statements of the various persons memorialized in the reports are not sufficiently similar to statements admitted into evidence under an enumerated hearsay exception, and, as discussed above, there are no other circumstances which guarantee trustworthiness. That Mr. Carta allegedly pled guilty to a charge in a case in which the case file contains a police report cannot, in and of itself, provide particularized guarantees of trustworthiness. For these reasons, the government's proffered exhibits are inadmissible under the residual hearsay exception.

II. **MR. CARTA HAS A RIGHT TO CONFRONT THE WITNESSES AGAINST HIM PURSUANT THE DUE PROCESS CLAUSE AND 18 U.S.C. § 4248.**

    A. **The Due Process Clause Provides a Right to Confrontation in this Proceeding**.

The United States Supreme Court has recognized that civil commitment for any purpose is a significant deprivation of liberty that requires due process protection. *Addington v. Texas*, 441 U.S. 418, 425 (1979). The "fundamental requisite" of due process under the Fourteenth Amendment is the "opportunity to be heard . . . in a meaningful time and in a meaningful

manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970). Although due process is a flexible concept, and the procedural requirements are tailored to the nature of the issues at stake, *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), the Supreme Court has recognized that "in almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg*, 397 U.S. at 267. The Court has also recognized that where, as here, the potential for indefinite detention exists, due process necessitates heightened procedural safeguards. *Zadvydas v. Davis*, 533 U.S. 678, 691 (2001) (noting that the Court has upheld indefinite preventative detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections).[2] Thus, in construing a state statute that provided for indefinite detention if an individual convicted of specific sex offenses was found by a judge to constitute a threat to members of the public, the Court held that due process requires, at a minimum, the right to counsel, to present evidence, and to confront and cross-examine witnesses:

> A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial, including the right to confront and cross-examine the witnesses against him.

*Specht v. Patterson*, 386 U.S. 605, 609-10 (1967) (holding that commitment proceedings under

---

[2] This Court has recognized in this very case that despite the fact that the proceeding here is labeled "civil," in certain circumstances due process requires procedural protections which mirror the protections afforded in criminal cases. *United States v. Shields*, 522 F.Supp. 2d 317, 328-331 (2007) (holding that section 4248 failure to require a finding of proof beyond a reasonable doubt that a person "has engaged or attempted to engage in sexually violent conduct or child molestation" prior to allowing that person's potentially indefinite commitment as a sexually dangerous person constitutes a violation of due process).

Colorado's Sex Offenders Act, whether denominated civil or criminal, are subject to the due process clause, and that minimal due process protections in this context include the right to confrontation).

The Supreme Court has not had occasion to evaluate whether the Due Process Clause permits the admission of hearsay evidence, such as the underlying police reports at issue here, in the context of sexually dangerous person commitment proceedings.  However, lower courts have held civil commitment statutes constitutionally defective for, in part, admitting hearsay evidence:

> Where standard [hearsay] exclusionary rules forbid the admission of evidence, no sound policy reasons exist for admitting such evidence in an involuntary mental commitment hearing.  Indeed, as noted throughout this opinion, the seriousness of the deprivation of liberty and the consequences which follow an adjudication of mental illness make imperative strict adherence to the rules of evidence generally applicable to other proceedings where an individual's liberty is in jeopardy.

*Lessard v. Schmidt*, 349 F.Supp. 1078, 1103 (E.D. Wis. 1972), *vacated on other grounds*, 414 U.S. 473 (1974), *on remand*, 379 F.Supp.1376 (E.D. Wis. 1974), *vacated on other grounds*, 421 U.S. 957 (1975), *on remand*, 413 F.Supp. 1318 (E.D. Wis. 1976) (holding Washington state civil commitment procedures constitutionally defective for a variety of reasons, including the fact that hearsay evidence was admitted); *see also Lynch v. Baxley*, 386 F.Supp. 378 394 (D.C. Ala. 1974) ("In particular, if hearsay evidence would be excluded from other proceedings, it should be excluded from commitment hearings as well.").

In other types of hearings where the defendant is afforded due process, the Supreme Court has held that minimal due process rights include the right to confront and cross-examine witnesses unless there is a specific finding of good cause to deny confrontation. *See Morrissey v. Brewer*, 408 U.S. 471 (1972).  Thus, even in situations like probation revocation hearings, where the

potential denial of liberty is not indefinite and where neither the rules of evidence nor the Sixth Amendment apply, the admission of unreliable hearsay violates the due process right to confrontation.  *See e.g.United States v. Taveras*, 380 F.3d 532, 537 (1st Cir. 2004) (probationer not afforded due process where district court allowed probation officer to testify to hearsay conversations he had with a complaining witness who alleged that Mr. Taveras had threatened her with a gun, and noting that "unsworn allegations are the least reliable type of hearsay".).

        **B.**        **18 U.S.C. § 4248 Provides a Statutory Right to Confrontation.**

Consonant with the Constitutional guarantee of Due Process, 18 U.S.C. § 4248(c) establishes a hearing procedure that provides a potential committee with the opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to <u>confront</u> and cross examine witnesses.  *See* 18 U.S.C. §4248(c) and 18 U.S.C. § 4247(d) (emphasis added).  Thus, Section 4248(c) affords Mr. Carta an explicit statutory right to confrontation.   In addition, the Rules of Evidence apply to proceedings under §4248(c).  *See* Fed.R.Evid. 101 and 1101.  Mr. Carta is protected by the dual safeguards of an explicit right to confrontation and the right to a hearing governed by the Rules of Evidence, both of which are designed to ensure reliability.

        **C.**        **The Content of the Confrontation Right Is Informed by Sixth Amendment Jurisprudence.**

Whether the right to confrontation derives from the due process clause or from statute, the <u>content</u> of the right is informed by the Supreme Court's Sixth Amendment jurisprudence.  The word "confront" or "confrontation" is a term of art taken from the Sixth Amendment.  It is therefore appropriate to look to Sixth Amendment cases to assess the meaning of "confrontation" even when the right derives from a separate source.

In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court considered whether the right to be "confronted by the witnesses" should be read to mean the right to confront "those who actually testify at trial . . . those whose statements are offered at trial . . . or something in between." *Id*. at 43 (internal citations omitted). Because the text of the Confrontation Clause did not answer the question, the Court examined the historical background of the Clause. The Court held that the principal evil at which the Confrontation Clause was directed was "the civil-law mode of criminal procedure, and particularly its use of ex parte examinations . . ." *Id*. at 51. After a lengthy historical analysis, the Court rejected the previous framework which held that the Confrontation Clause only applied to in-court testimony, and that the admissibility of out-of-court statements introduced at trial should depend solely on the law of evidence:

> Leaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most fragrant inquisitorial practices. Raleigh was, after all, perfectly free to confront those who read Cobham's confession in court.

*Id.* at 51-52 (internal citations omitted).

The *Crawford* Court concluded that, where testimonial statements are at issue, the Confrontation Clause demands that their reliability be assessed not through application of the rules of evidence, but by cross-examination: Where testimonial statements are involved, the Confrontation Clause demands that the reliability of the evidence "be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61.[3] The Court recognized that

---

[3] Testimonial statements are "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 52. The statements at issue in the government's exhibits, reports given by complainants and witnesses to police investigating an alleged sexual assault, clearly fall into this category.

-14-

cross-examination is the most reliable method for giving meaning to the right of confrontation.

Mr. Carta's due process and statutory rights to confrontation preclude the government from admitting testimonial statements against him without affording him the right to contest the reliability of those statements in the manner prescribed by the confrontation clause: cross-examination. Because Mr. Carta cannot cross-examine a hearsay document, this Court must exclude the government's proffered exhibits.

## Conclusion

For the foregoing reasons, Mr. Carta respectfully request that this Court exclude hearsay evidence and testimony at the trial.

> Respectfully submitted,
>
> TODD CARTA
> by his attorney
>
> /s/ Page Kelley
> Page Kelley, Esq.
> FEDERAL DEFENDER OFFICE
> 408 Atlantic Ave., 3d Floor
> Boston, MA 02110
> 617-223-8061
> PAGE_KELLEY@FD.ORG

January 30, 2009

## Certificate of Service

I, Page Kelley, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 30, 2009.

> /s/Page Kelley
> Page Kelley