UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 07-12064-JLT |
| ) | |
| TODD CARTA, ) | |
| ) | |
| Respondent. ) | |

## GOVERNMENT'S TRIAL BRIEF

**I.   INTRODUCTION**

This civil action was commenced under the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (2006) (the "Adam Walsh Act"), by the March 7, 2007 certification of the Bureau of Prisons ("BOP") that Respondent Todd Carta ("Carta" or "Respondent") is a sexually dangerous person. See 18 U.S.C. § 4248(a).

This Court must now determine whether there is clear and convincing evidence that Carta is a sexually dangerous person, as that term is defined under the Adam Walsh Act. See 18 U.S.C. § 4248(a) and (d). As discussed below, the government expects to prove that Carta is a sexually dangerous person who must be civilly committed because (1) he has, inter alia, admitted to numerous acts of child molestation and/or sexually violent conduct; (2) he suffers from a serious mental illness, abnormality, or disorder, namely, paraphilia not otherwise specified and a personality disorder with antisocial and

borderline traits; and (3) as a result, Carta would have serious difficulty in refraining from child molestation and/or sexually violent conduct if released.  See 18 U.S.C. § 4247(a)(5)-(6).

## II.     RELEVANT PROCEDURAL BACKGROUND

On March 7, 2007, the BOP certified that Carta is a "sexually dangerous person." [Docket No. 1]; see also, 18 U.S.C. § 4248(a).  The certification both requires the district court to conduct a hearing to determine if Carta is a sexually dangerous person and stays Carta's release from the BOP until such a determination is made.  Id.  Carta is housed at the BOP's Federal Medical Center at Devens, where he is expected to remain through the conclusion of this commitment proceeding.

On May 18, 2007, Respondent made a facial challenge to the constitutionality of the Adam Walsh Act. [Docket Nos. 9, 10, and 11].  By Memorandum dated August 24, 2007, this Court rejected that challenge, and, inter alia, found that 18 U.S.C. § 4248 was a civil, not criminal statute. [Docket No. 22].

In a May 13, 2008, Order, the Court, at the request of the Respondent, designated Dr. Leonard Bard as an examiner in this case.  The Court also appointed Dr. Amy Phenix as the government's expert.  Both experts have filed reports with the Court and are expected to provide expert opinions at the upcoming trial.  Dr. Phenix opined that Mr. Carta is a sexually dangerous person and Dr. Bard found that he is not.

## III.     LEGAL PRINCIPLES

As defined in the Adam Walsh Act, a "sexually dangerous person" is "a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." 18 U.S.C. §4247(a)(5). Congress did not further define child molestation. However, the BOP regulations define "sexually violent conduct" as "any unlawful conduct of a sexual nature with another person ("the victim") that involves: a) the use or threatened use of force against the victim; b) threatening or placing the victim in fear that the victim, or any other person, will be harmed; c) rendering the victim unconscious and thereby engaging in conduct of a sexual nature with the victim; d) administering to the victim, by force of threat of force, or without the knowledge or permission of the victim, a drug, intoxicant, or other similar substance, and thereby substantially impairing the ability of the victim to appraise or control conduct; or e) engaging in such conduct with a victim who is incapable of appraising the nature of the conduct, or physically or mentally incapable of declining participation in, or communicating unwillingness to engage in, that conduct." 28 C.F.R. § 549.92 (2008). The regulations define "child molestation," for purposes of certification, as including "any unlawful conduct of a sexual nature with, or sexual exploitation of, a person under the age of 18 years." 28 C.F.R. § 549.93 (2008).

"'Sexually dangerous to others' with respect to a person, means that the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child

molestation if released." 18 U.S.C. §4247(a)(6).  Congress did not further define or explain its use of the phrase "serious difficulty in refraining from."  Accordingly, the government must show that:

1. Carta has engaged or attempted to engage in sexually violent conduct or child molestation in the past;

2. Carta currently suffers from a serious mental, illness, abnormality, or disorder;[1] and

3. As a result of a serious mental, illness, abnormality, or disorder, Carta would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

The government must demonstrate by "clear and convincing evidence" that Carta is a sexually dangerous person.  See 18 U.S.C. § 4248(d).  The clear and convincing evidence standard is higher than the "preponderance of the evidence" standard typically used in civil cases and requires the government to prove its contentions are "highly probable."  Colorado v. New Mexico, 467 U.S. 310, 316 (1984); John W. Strong, ed., 2 McCormick on Evidence, , Law of Evidence § 340, West Group 1999).

---

[1] The government must establish a current serious mental illness, abnormality, or disorder.  As the Supreme Court has recognized in a civil commitment context, however, "[p]revious instances of violent behavior are an important indicator of future violent tendencies."  Hendricks, 521 U.S. at 358 (quoting Heller v. Doe, 509 U.S. 312, 323 (1993)).

## IV. ARGUMENT

### A. Carta has engaged or attempted to engage in sexually violent conduct or child molestation in the past.

The evidence will show that Carta has admitted to engaging in numerous acts of child molestation and/or sexually violent conduct.[2] For example, when Carta was 30-31, he began a long-term sexual relationship with a boy who was 13. When Carta was 39, he began chatting on-line with a 13-year old male whom Carta later met and molested on a number of occasions. Carta also admitted to a sexual relationship with a 17-year old and 15-year old child. This relationship eventually led to his conviction in Connecticut for Risk of Injury to a Minor as a result of his providing alcohol and marijuana to these children.

Carta's admissions alone[3] regarding his own acts of child molestation satisfy the government's burden of proof with respect to this prong of the statute.

---

[2] Carta's sexual contact with children occurred in Connecticut or California. Such contact with any child under 16, with certain exceptions up to the age of 18, in Connecticut and under age 18 in California is unlawful. See Conn. Gen. Stat. Ann. Section 53a-71 and Cal. Penal Code Section 261.5.

[3] In addition, on October 8, 2002, he was convicted of transporting child pornography in violation of 18 U.S.C. § 2252A. As the BOP regulations define "child molestation," for purposes of certification, as including "any unlawful conduct of a sexual nature with, or sexual exploitation of, a person under the age of 18 years," 28 C.F.R. § 549.93 (2008) (emphasis added), his federal conviction arguably constitutes an act of child molestation, in that it involves sexual exploitation of children, sufficient to satisfy 18 U.S.C. § 4247.

> **B. Carta currently suffers from a serious mental illness, abnormality, or disorder.**

Dr. Amy Phenix, the government's expert, has diagnosed Carta with paraphilia, not otherwise specified ("NOS"), a personality disorder with antisocial and borderline traits, and a variety of substance abuse disorders.

> **1. Paraphilia NOS**

Paraphilia NOS is a DSM-IV-Tr[4] diagnosis. The DSM-IV-Tr describes this diagnosis as follows:

> This category is included for coding Paraphilias that do not meet the criteria for any of the specific categories. Examples include, but are not limited to, telephone scatologia (obscene phone calls), necrophilia (corpses), partialism (exclusive focus on part of body), zoophilia (animals), coprophilia (feces), klismaphilia (enemas), and urophilia (urine).

DSM-IV-Tr at p. 576. The diagnostic features for a paraphilia in general are as follows:

> recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons that occur over a period of at least 6 months.

DSM-IV-Tr at p. 566. In addition, a paraphilia diagnosis, such as paraphilia NOS, is made if "the behavior, sexual urges, or fantasies cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." Id.

Dr. Phenix is expected to testify that Carta suffers from paraphilia NOS. In

---

[4] The Diagnostic and Statistical Manual-IV Text Revision ("DSM-IV-TR") is published by the American Psychiatric Association and is regularly relied on by professionals to define and diagnose mental illnesses and disorders. See Kosilek v. Maloney, 221 F. Supp.2d 156, 163 n. 2 (D. Mass. 2002) (Wolf, Ch. J.).

addition, Dr. Phenix is expected to further describe Carta's paraphilic condition as an attraction to post-pubescent boys. More specifically, Dr. Phenix is expected to testify that Carta experiences intense sexual fantasies or urges involving post-pubescent children that have been acted upon or have caused marked distress or interpersonal difficulties.

In connection with her diagnosis, Dr. Phenix uses the term "hebephilic." The government anticipates that Respondent will argue, possibly under <u>Daubert</u>, that hebephilia is not a valid diagnosis because it is not specifically mentioned in the DSM-IV-Tr. Respondent's anticipated argument is mistaken.[5] First, Dr. Phenix has diagnosed Carta with paraphilia NOS which is a diagnosis specifically recognized in the DSM-IV. Thus, although she has used a specific descriptor (hebephilia), she has actually diagnosed him with a mental abnormality found in the DSM-IV.

Second, the Adam Walsh Act does not require the government to prove a serious mental illness, abnormality or disorder is recognized in the DSM-IV. Indeed, various state courts have rejected the requirement that a mental abnormality or personality

---

[5] Respondent's may rely on Judge Saris's opinion in <u>United States v. Shields</u>, 2008 WL 544940 (D. Mass. February 26, 2008) After an evidentiary hearing on <u>Daubert</u> issues, Judge Saris found that the evidence before her did not establish that hebephilia alone was generally accepted as a mental disorder by persons who assess sexually violent offenders. She further found that there was inadequate evidence regarding a diagnosis of paraphilia NOS that encompassed hebephilia. <u>Id</u>. at * 2. Judge Saris' opinion is distinguishable from the case at bar. First, Blanchard's 2008 peer-reviewed article discussed below that answers the very question before Judge Saris had not gone to press at the time of the hearing. Second, the government expert in that case had made a diagnosis of hebephilia, not a diagnosis of paraphilia NOS as is the case here. Third, the government did not present to Judge Saris the numerous state court opinions in which many experts in the field of assessing sexually violent offenders had rendered opinions in which they opined that paraphilia NOS hebephilia was a valid diagnosis of a mental disorder.

disorder be included in the DSM-IV for the diagnosis to support a finding of sexual dangerousness.  See Commonwealth v. Starkus, 69 Mass. App. 326, 335-36 (2007); In re Commitment of Frankovitch, 211 Ariz. 370, 375 (Ariz. App. 2005).  See also Kansas v. Hendricks, 521 U.S. 346, 360 n. 3 (1977) (disagreements between psychiatric professionals on definitions do not tie the government's hands in setting the bounds of its civil commitment laws; "In fact, it is precisely where such disagreement exist that legislatures have been afforded the widest latitude in drafting such statutes . . . As we have explained regarding congressional enactments, when a legislature "undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation."  (internal citations omitted)).

Finally, hebephilia is a description that is widely accepted in the field of psychology and psychiatry.  The clinical term hebephilia dates back to a 1955 study by Glueck.  See Glueck, B.C., Jr. (1955), *Final Report: Research Project for the study and treatment of persons convicted of crimes involving sexual aberrations.  June 1952 to June 1955*.  New York:  New York State Department of Mental Hygiene.

A recent peer-reviewed study confirms the existence of an erotic preference for pubescent children as a mental disorder.  Blanchard, R., *Pedophelia, Hebephilia, and the DSM-V*, Archives of Sexual Behavior (2008) (a copy of this article is attached as Exhibit A).  The study states that by defining pedophilia as the erotic preference for prepubescent children, a substantial body of evidence indicates that the DSM-IV-Tr if taken literally

would exclude from legitimate diagnosis a sizeable proportion those men whose strongest sexual feelings are for physically immature persons.  Id.

Current peer-reviewed literature has demonstrated the utility of specifying a hebephilic group as the subject of study.  See, e.g., Cantor, J.M., et al (2007), *Physical Height in Pedophilic and Hebephilic Sexual Offenders*, Sex Abuse (factor influencing the development of hebephilia) (a copy of this article is attached as Exhibit B); Blanchard, R., et al., (July 17, 2007) *IQ, Handedness, and Pedophilia in Adult Male Patients Stratified by Referral Source*, Sex Abuse p. 286 ("the term hebephilia (Glueck, 1955) refers to persons who are most attracted to pubescent children") (a copy of the article is attached as Exhibit C); Cantor, J.M., et al. (December 2006) *Grade Failure and Special Education Placement in Sexual Offenders' Educational Histories*, Archives of Sexual Behavior, Vol. 35, No. 6, December 2006, pp. 743-751 (a copy of this article is attached as Exhibit D); Cantor, J. M. et al., (August, 2005) *Handedness in Pedophilia and Hebephilia*, Archives of Sexual Behavior, Vol. 34, No. 4 pp. 447-459 (hebephiles found to be different than those attracted to adults) (a copy of this article is attached as Exhibit E) .  Accordingly, hebephilia is a well-established clinical diagnosis that has been accepted as such in peer-reviewed journals, and in the relevant scientific community.

In one of the first Adam Walsh Act cases to go to trial, a diagnosis of paraphilia NOS hebephilia was a contested issue.  In United Sates v. Abregana, 574 F. Supp.2d 1145 (D. Hawaii 2008), two experts, Dr. Doren and Dr. Howard Barbaree testified that paraphilia NOS hebephilia was a recognized diagnosis of a mental disorder in the relevant

scientific community. Dr. Barbaree, one of the respondent's experts, testified that "hebephilia is known in the field as indicating a sexual interest in post-pubescent individuals." Id. at 1153. While noting that there is some controversy over whether hebephilia is a valid diagnosis, Dr. Barbaree agreed that there are authorities in the field who consider it a mental disorder. Indeed, Dr. Barbaree testified that he had co-authored a chapter in a text which characterizes hebephilia as a mental disorder. Id. Respondent's other expert, Dr. Luis Rosell, testified that the Respondent had an attraction to adolescents but hebephilia was not listed in the DSM-IV-Tr or in some other important literature. Faced with this conflicting testimony, the court decided that Abregana did suffer from a mental disease or disorder in that he suffered from paraphilia NOS within the meaning of the DSM-IV-Tr. While finding in that case the disorder was not serious, the Court did find that Abregana suffered from a "specific paraphilia" or hebephilia "which involves an intense arousal to adolescents." Id. at 1154 and 1159.

As further evidence of its acceptance, various courts[6] have upheld the civil commitment of a sexually dangerous person on the basis of a paraphilia NOS diagnosis with hebephilic characteristics. See In re Matter of G.R.H., 758 N.W.2d 719 (Supreme Court of N.D. 2008) (upholds continued commitment of sexually dangerous person where expert finds respondent suffers from antisocial personality disorder and paraphilia NOS

---

[6] These cases contain references to numerous experts, in addition to Dr. Doren, who have given a diagnosis of hebephilia in sexually dangerous or sexually violent person cases across the country.

hebephilia); In re Matter of Civil Commitment of K.H., 2008 WL 4648460 (unpublished) (N.J. Super.A.D. 2008) (civil commitment where expert finds respondent suffers from paraphilia NOS and hebephilia and personality disorder NOS with narcissistic and anti-social traits); In re Matter of Civil Commitment of E.J.S., 2007 WL 1038894 (unpublished) (N.J. Super. A.D. 2007) (upholds continued commitment where diagnosis of paraphilia NOS hebephilia is contested); In re the Detention of Wayne Atwood, 2005 WL 974042 (unpublished) (Iowa App. 2005) (finding ample record evidence on which a jury could have found respondent's hebephilia to be a mental abnormality justifying his commitment without reliance on alcohol dependency or depression evidence); In the Matter of the Civil Commitment of V.A., 357 N.J. Super. 55 (Superior Court of New Jersey 2003); In the Matter of Martinelli, 649 N.W.2d 886, 891 (Court of Appeals Minnesota 2002) ( "the evidence as a whole establishes a diagnosis of a mental disorder or abnormality (hebephilia and antisocial personality disorder) which is linked to a difficulty in controlling behavior that is properly described as serious.").

Accordingly, the government submits that it will prove that Carta suffers from a serious mental illness, abnormality or disorder – namely paraphilia NOS hebephilia.

## 2. Personality Disorder with Antisocial and Borderline Traits

In addition, Dr. Phenix has diagnosed Carta as suffering from personality disorder with antisocial and borderline traits.  The DSM-IV-Tr defines a personality disorder as an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has an onset in adolescence or early adulthood, is stable over time and leads to distress or impairment. DSM-IV-Tr at 685.

Dr. Phenix is expected to testify that Carta has exhibited a number of anti-social personality disorder traits.  For example, since the age of 16 and throughout his adult life, has accumulated many arrests, most resulting in convictions, for various types of criminal activity.   After dropping out of high school, he lived a life dependent on illicit drugs, criminal activity, with little community stability or gainful employment.  He has threatened various family members, including his mother, father, sister, and sister's boyfriend.  He has retaliated against and attempted to humiliate his sexual partners by publishing details of their sexual behavior.   Dr Phenix will testify that such behavior contributed to her diagnosis that Carta suffers from a personality disorder with antisocial traits.

Dr. Phenix is expected to testify that Carta has exhibited a number of traits of borderline personality disorder including: his attempted suicide after his wife ended their brief marriage; after being spurned by his girlfriend Brenda and boyfriend Frederick, his efforts to devalue both persons by disclosing over the internet and with flyers intimate

details of their sex lives; his behavioral impulsivity through the use of illegal drugs and alcohol; and his demonstrated affective instability marked by irritability, aggression and hostility towards others including family members.

As a result of these diagnosis, the government expects to prove that Carta meets the second criteria for commitment, namely that he suffers from a serious mental illness, abnormality or disorder.

### C. As a result of a serious mental, illness, abnormality, or disorder, Carta would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

The final element required for civil commitment under the Adam Walsh Act is that, as a result of his mental illness the respondent "would have serious difficulty in refraining from sexually violent conduct and/or child molestation, if released from confinement."  18 U.S.C. § 4247(a)(6).  Because Congress did not further define or explain its use of the phrase "serious difficulty in refraining from," this court is left with the plain meaning of the words used.  In Hendricks, however, the Supreme Court recognized that the Kansas civil commitment statute required only proof of the respondent's *risk to reoffend* if released.  521 U.S. at 357 (noting statute required proof of "likelihood" of committing sexually violent conduct)."[7]  Thus, the statute does not require

---

[7] The government has not found a state civil commitment statute that uses precisely the same language as the Adam Walsh Act, but the wording of the Kansas civil commitment statute is similar and is the statute examined by the Supreme Court in Hendricks.  The statute "establishes procedures for civil commitment of persons who, due to a 'mental abnormality' or a 'personality disorder,' are likely to engage in 'predatory acts of violence.'").  Kan. State. Ann. §59-29a01, et seq. (1994).

proof that the a particular respondent will reoffend, as Congress presumably recognized such a burden is impossibly high, but rather requires an assessment of the risk a respondent presents of reoffending.

The government expects the evidence will show, through expert testimony and accompanying documents, that, given his history and his diagnosis, Carta will have serious difficulty in refraining from sexually violent conduct and/or child molestation if released. Further, the government will present evidence that Carta is at a high risk to reoffend on the basis of his scores on various actuarial tools, such as the Static-99. The Static-99, like other actuarial instruments, looks at existing risk factors for sexual recidivism and calculates a total score that corresponds to various risk categories, all based on a sex offender's personal history.

Here, both Dr. Bard and Dr. Phenix used the same methodology. They each used two of the same actuarial instruments - the Static-99, and the MNSOST-R. In addition, Dr. Bard used a third actuarial instrument the RRASOR. They also examined the same dynamic risk factors - intimacy deficits, sexual self-regulation and general self-regulation. They, however, reached different conclusions. The government submits that Dr. Phenix's opinion that Carta is a sexually dangerous person is supported by clear and convincing evidence and should be adopted by this Court.

It is generally accepted in the sex offender field that validated actuarial risk assessment instruments provide a more accurate and reliable assessment of a sex offender's likelihood of reoffending than even the best and most experienced clinical

judgments.  See United States v. Shields, 2008 WL 544940, *2 (D. Mass. Feb. 26, 2008) (finding that actuarial risk assessments are reliable under Daubert, in part because they "are generally accepted as a reliable methodology within the relevant scientific community and they have been subject to peer review").

The Supreme Court of Illinois considered the use of actuarial risk assessment instruments in a case that questioned their admissibility under Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).  In re: Commitment of Stephen E. Simons, 213 Ill.2d 523, 821 N.E. 2d 1184 (2004).  The court concluded: "[W]hether or not actuarial risk assessment is subject to Frye, there is no question that it is generally accepted by professionals who assess sexually violent offenders and therefore is perfectly admissible in a court of law.  As of this writing, experts in at least 19 other states rely upon actuarial risk assessment in forming their opinions on sex offenders' risks of recidivism."  Simons, 213 Ill.2d at 535, 821 N.E. at 1192 (citations omitted).[8]

In considering the risk assessment instruments and the established rates of recidivism, terminology, again, is important.  The rates of recidivism associated with the different scores are what experience and research have established as the rates at which all sex offenders (males) with particular scores will recidivate over different periods of

---

[8] As the Adam Walsh Act was enacted in 2006, and state civil commitment statutes for sex offenders have existed in many states for a long time, almost all reported decisions are from state courts. The Simons case from the Supreme Court of Illinois is particularly instructive, as the opinion includes a thorough review of case law from other jurisdictions with sex offender civil commitment statutes, as well as the literature in the sex offender field, in arriving at its holding that risk assessment instruments such as the Static-99 are admissible on the issue of sexual dangerousness.

time. The rates should not be viewed as a prediction of whether any particular respondent will reoffend, and that is certainly not what the Adam Wash Act requires this Court to determine. Risk assessment reoffense rates are most helpful when viewed in light of the dangerousness "element" of the statute, which requires this Court to determine, among other things, whether the respondent would have serious difficulty in refraining from sexually violent conduct or child molestation if released. If Carta credibly falls within the a high risk category of sex offenders by one or more validated risk assessment instruments, the government contends that such evidence is a strong indication that he meets the dangerousness "element" of the Adam Walsh Act.

## VI. **CONCLUSION**

For the foregoing reasons, and based on the evidence admitted at trial, the government respectfully requests that this Court find that Carta is a sexually dangerous and civilly commit him to the custody of the Bureau of Prisons.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

                              By:  /s/ Jennifer C. Boal
                                        Jennifer C. Boal
                                        Eve Piemonte Stacey
                                        Assistant U.S. Attorneys
                                        John Joseph Moakley U.S. Courthouse
                                        1 Courthouse Way, Suite 9200
                                        Boston, MA 02210
Dated: February 4, 2009                (617) 748-3100

## **Certificate of Service**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on February 4, 2009.

                                        /s/Eve Piemonte Stacey
                                        Eve Piemonte Stacey
                                        Assistant United States Attorney