**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____ )
                                )
UNITED STATES OF AMERICA,       )
                                )
        Petitioner,             )
                                )
v.                              )    Civil Action No. 07-12064-JLT
                                )
TODD CARTA,                     )
                                )
        Respondent.             )
_____ )

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF A FINDING THAT CARTA IS A SEXUALLY DANGEROUS PERSON**

**I.   LEGAL PRINCIPLES**

This civil action was commenced under the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (2006) (the "Adam Walsh Act"), by the March 7, 2007 certification of the Bureau of Prisons ("BOP") that Respondent Todd Carta ("Carta" or "Respondent") is a sexually dangerous person. See 18 U.S.C. § 4248(a).

As defined in the Adam Walsh Act, a "sexually dangerous person" is "a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." 18 U.S.C. §4247(a)(5). Congress did not further define child molestation. However, the BOP regulations define "sexually violent conduct" as "any unlawful conduct of a sexual nature with another person ("the victim") that involves: a) the use or threatened use of force against the victim; b) threatening or

placing the victim in fear that the victim, or any other person, will be harmed; c) rendering the victim unconscious and thereby engaging in conduct of a sexual nature with the victim; d) administering to the victim, by force of threat of force, or without the knowledge or permission of the victim, a drug, intoxicant, or other similar substance, and thereby substantially impairing the ability of the victim to appraise or control conduct; or e) engaging in such conduct with a victim who is incapable of appraising the nature of the conduct, or physically or mentally incapable of declining participation in, or communicating unwillingness to engage in, that conduct." 28 C.F.R. § 549.92 (2008). The regulations define "child molestation," for purposes of certification, as including "any unlawful conduct of a sexual nature with, or sexual exploitation of, a person under the age of 18 years." 28 C.F.R. § 549.93 (2008).

"'Sexually dangerous to others' with respect to a person, means that the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. §4247(a)(6). Congress did not further define or explain its use of the phrase "serious difficulty in refraining from." Accordingly, it is the government's burden to prove that:

1. Carta has engaged or attempted to engage in sexually violent conduct or child molestation in the past;

2. Carta currently suffers from a serious mental, illness, abnormality, or

disorder;[1] and

3. As a result of a serious mental, illness, abnormality, or disorder, Carta would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

The government has demonstrated by "clear and convincing evidence"[2] that Carta is a sexually dangerous person.  See 18 U.S.C. § 4248(d).

## II. ARGUMENT

### A. Carta has engaged or attempted to engage in sexually violent conduct or child molestation in the past.

The evidence has shown that Carta has admitted to engaging in numerous acts of child molestation and/or sexually violent conduct.[3]  Carta's admissions alone regarding his own acts of child molestation satisfy the government's burden of proof with respect to this prong of the statute.  Indeed, both experts agree that Carta's past conduct meets this element of the statute.  Tr. 2/9/09 at 174; Tr. 2/10/09 at 153.

### B. Carta currently suffers from a serious mental illness, abnormality, or

---

[1] The government must establish a current serious mental illness, abnormality, or disorder.  As the Supreme Court has recognized in a civil commitment context, however, "[p]revious instances of violent behavior are an important indicator of future violent tendencies."  Hendricks, 521 U.S. at 358 (quoting Heller v. Doe, 509 U.S. 312, 323 (1993)).

[2] The clear and convincing evidence standard is higher than the "preponderance of the evidence" standard typically used in civil cases and requires the government to prove its contentions are "highly probable."  Colorado v. New Mexico, 467 U.S. 310, 316 (1984); John W. Strong, ed., 2 McCormick on Evidence, , Law of Evidence § 340, West Group 1999).

[3] Carta's sexual contact with children occurred in Connecticut or California.  Such contact with any child under 16, with certain exceptions up to the age of 18, in Connecticut and under age 18 in California is unlawful.  See Conn. Gen. Stat. Ann. Section 53a-71 and Cal. Penal Code Section 261.5.

>   **disorder**

Dr. Amy Phenix, the government's expert, diagnosed Carta with Paraphilia Not Otherwise Specified ("NOS"), a personality disorder with antisocial and borderline traits, and a variety of substance abuse disorders. Government Exhibit 1.  Dr. Leonard Bard, the court examiner, diagnosed Carta with nothing, but stated that he needed treatment.  Tr. 2/11/09 at 106; Tr. 2/11/09 at 104.

>   **1.     Paraphilia NOS**

The government has proved, by clear and convincing evidence, that Carta suffers from a serious mental disorder, Paraphilia NOS.  The descriptor for Carta's specific paraphilia is hebephilia, or a sexual arousal to pubescent children.  This mental disorder is serious, for the reasons set forth below, as it has been treatment resistant, and has caused Carta significant distress or impairment in other areas of functioning.

Paraphilia NOS is a DSM-IV-TR[4] diagnosis.   The DSM-IV-TR describes this diagnosis as follows:

> This category is included for coding Paraphilias that do not meet the criteria for any of the specific categories.  Examples include, but are not limited to, telephone scatologia (obscene phone calls), necrophilia (corpses), partialism (exclusive focus on part of body), zoophilia (animals), coprophilia (feces), klismaphilia (enemas), and urophilia (urine).

Government Exhibit 11 (DSM-IV-Tr at p. 576).  The diagnostic features for a paraphilia

---

[4] The Diagnostic and Statistical Manual-IV Text Revision ("DSM-IV-TR") is published by the American Psychiatric Association and is regularly relied on by professionals to define and diagnose mental illnesses and disorders.  See Kosilek v. Maloney, 221 F. Supp.2d 156, 163 n. 2 (D. Mass. 2002) (Wolf, Ch. J.); see also Tr. 2/10/09 at 172 (Dr. Bard testified that the DSM is relied upon by medical professionals).

in general are as follows:

> recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons that occur over a period of at least 6 months

Id. at p. 566.  In addition, a paraphilia diagnosis, such as Paraphilia NOS, is made if "the behavior, sexual urges, or fantasies cause clinically significant distress or impairment in social, occupational, or other important areas of functioning."  Id.

Dr. Phenix testified that Carta suffers from paraphilia NOS.  In addition, Dr. Phenix further described Carta's paraphilic condition as an attraction to post-pubescent boys, and that Carta experiences intense sexual fantasies or urges involving post-pubescent boys that have been acted upon or have caused marked distress or interpersonal difficulties.  In connection with her diagnosis, Dr. Phenix uses the term "hebephilia" as a further descriptor of her diagnosis of Carta with Paraphilia NOS.

Respondent has argued that hebephilia is not a valid diagnosis because it is not specifically mentioned in the DSM-IV-TR.  Respondent's argument is mistaken for several reasons.[5]  First, Dr. Phenix diagnosed Carta with Paraphilia NOS which is a

---

[5] Respondent may rely on Judge Saris's opinion in United States v. Shields, 2008 WL 544940 (D. Mass. February 26, 2008).  After an evidentiary hearing on Daubert issues, Judge Saris found that the evidence before her did not establish that hebephilia alone was generally accepted as a mental disorder by persons who assess sexually violent offenders.  She further found that there was inadequate evidence regarding a diagnosis of Paraphilia NOS that encompassed hebephilia.  Id. at * 2.  Judge Saris' opinion is distinguishable from the case at bar.  First, Blanchard's 2008 peer-reviewed article discussed below had not gone to press at the time of the hearing.  Second, the government expert in that case had made a diagnosis of hebephilia, not a diagnosis of paraphilia NOS as is the case here.   Third, the government did not present to Judge Saris the numerous state court opinions in which many experts in the field of assessing

diagnosis specifically recognized in the DSM-IV.  Thus, although she has used a specific descriptor ("hebephilia"), she has, in fact, diagnosed Carta with a mental abnormality found in the DSM-IV.  Dr. Bard testified that the hebephilia descriptor was used in the field.  Tr. 2/10/09 at 171, 176.  Dr. Bard also agreed that Carta exhibited recurrent, intense sexually arousing fantasies, urges or behaviors, an element of Paraphilia NOS.  Tr. 2/10/09 at 173.

Second, the Adam Walsh Act does not require the government to prove a serious mental illness, abnormality or disorder recognized in the DSM-IV.  Indeed, various state courts have rejected the requirement that a mental abnormality or personality disorder be included in the DSM-IV for the diagnosis to support a finding of sexual dangerousness.  See Commonwealth v. Starkus, 69 Mass. App. 326, 335-36 (2007); In re Commitment of Frankovitch, 211 Ariz. 370, 375 (Ariz. App. 2005).

Third, hebephilia is a description that is widely accepted in the field of psychology and psychiatry.  The clinical term hebephilia dates back to a 1955 study by Glueck.  See Glueck, B.C., Jr. (1955), *Final Report: Research Project for the study and treatment of persons convicted of crimes involving sexual aberrations.  June 1952 to June 1955*.  New York:  New York State Department of Mental Hygiene; see also Tr. 2/10/09 at 177.  A book entitled *Sex Offenders*, published in 1965, also contains a definition of hebephilia.

---

sexually violent offenders had rendered opinions in which they opined that paraphilia NOS hebephilia was a valid diagnosis of a mental disorder and such diagnosis was accepted by courts as a basis for civil commitment.

Id.

A recent peer-reviewed study confirms the existence of an erotic preference for pubescent children as a mental disorder. Blanchard, R., *Pedophelia, Hebephilia, and the DSM-V*, Archives of Sexual Behavior (2008). The study states that by defining pedophilia as the erotic preference for prepubescent children, a substantial body of evidence indicates that the DSM-IV-TR, if taken literally, would exclude from legitimate diagnosis a sizeable proportion of those men whose strongest sexual feelings are for physically immature persons. Id. Additionally, Blanchard concluded that hebephilia exists, and is relatively common compared with other forms of erotic interest in children. Id.

In a book authored by Seto[6], *Pedophilia and Sexual Offending Against Children* (2008), hebephilia is used to describe a sexual preference for pubescent children. Tr. 2/10/09 at 178. Dr. Doren's publication, *A Manual of Civil Commitments* (2002) describes a Paraphilia NOS, with a descriptor of hebephilia, as the pursuit of sexual contact with adolescents and seeking that contact despite the consequences, as Carta has done. Tr. 2/10/09 at 179, 180.

Current peer-reviewed literature further demonstrates the utility of specifying a hebephilic group as the subject of study. See, e.g., Cantor, J.M., et al (2007), *Physical Height in Pedophilic and Hebephilic Sexual Offenders*, Sex Abuse (factors influencing

---

[6] Dr. Bard agrees that Seto is a respected researcher in the field of sex offending. Tr. 2/10/09 at 178, 179. However, he claimed not to be familiar with this publication. Id.

the development of hebephilia); Blanchard, R., et al., (July 17, 2007) *IQ, Handedness, and Pedophilia in Adult Male Patients Stratified by Referral Source*, Sex Abuse p. 286 ("the term hebephilia (Glueck, 1955) refers to persons who are most attracted to pubescent children"); Cantor, J.M., et al. (December 2006) *Grade Failure and Special Education Placement in Sexual Offenders' Educational Histories*, Archives of Sexual Behavior, Vol. 35, No. 6, December 2006, pp. 743-751; Cantor, J. M. et al., (August, 2005) *Handedness in Pedophilia and Hebephilia*, Archives of Sexual Behavior, Vol. 34, No. 4 pp. 447-459 (hebephiles found to be different than those attracted to adults).[7] Accordingly, although not without controversy, hebephilia is a clinical description that has been accepted in peer-reviewed journals, and in the relevant scientific community.

As evidence that a diagnosis of Paraphilia NOS (hebephilia) is accepted in the field, on January 23, 2006, Dr. Michael Wood[8] gave Carta this diagnosis before civil commitment was even possible for Carta in the federal system. Government Exhibit 25 at C00947. Dr. Wood gave Carta this diagnosis for the sole purpose of treatment. See Id.

In one of the first Adam Walsh Act cases to go to trial, a diagnosis of Paraphilia NOS (hebephilia) was a contested issue. In United Sates v. Abregana, 574 F. Supp.2d

---

[7] Copies of these peer-reviewed articles were submitted with the government's trial brief. [D. 88, D. 88-2].

[8] Although Dr. Wood was a psychology predoctoral intern at the time, all of his work was supervised and approved by a psychologist. Tr. 2/9/09 at 42-43. In addition. Dr. Wood had worked with sex offenders for five years prior to his interaction with Carta, and had written thousands of risk assessment reports for sex offenders for the state of Arkansas. Tr. 2/9/09 at 43, 124.

1145 (D. Hawaii 2008), two experts, Dr. Doren and Dr. Howard Barbaree[9] testified that Paraphilia NOS (hebephilia) was a recognized diagnosis of a mental disorder in the relevant scientific community.  Dr. Barbaree, one of the respondent's experts, also testified that "hebephilia is known in the field as indicating a sexual interest in post-pubescent individuals."  Id. at 1153.  While noting that there is some controversy over whether hebephilia is a valid diagnosis, Dr. Barbaree agreed that there are authorities in the field who consider it a mental disorder.  Indeed, Dr. Barbaree testified that he had co-authored a chapter in a text which characterizes hebephilia as a mental disorder.  Id.  Like Dr. Bard in this case, respondent's other expert, Dr. Luis Rosell, testified that the respondent had an attraction to adolescents, but hebephilia was not listed in the DSM-IV-TR or in some other important literature.   Faced with this conflicting testimony, the court decided that Abregana did suffer from a mental disease or disorder in that he suffered from Paraphilia NOS within the meaning of the DSM-IV-TR.  While finding in that case the disorder was not serious for Abregana, the court did find that Abregana suffered from a "specific paraphilia," or hebephilia, "which involves an intense arousal to adolescents." Id. at 1154 and 1159.

As further evidence of its acceptance, various courts[10] have upheld the civil

---

[9] Dr. Bard agreed that Dr. Barbaree is a respected and well-known researcher in the sex offender field.  Tr. 2/11/09 at 84.

[10]  These cases contain references to numerous experts, in addition to Dr. Doren, who have given a diagnosis of hebephilia in sexually dangerous or sexually violent person cases across the country.

commitment of a sexually dangerous person on the basis of a Paraphilia NOS diagnosis with hebephilic characteristics.  See In re Matter of G.R.H., 758 N.W.2d 719 (Supreme Court of N.D. 2008) (upholds continued commitment of sexually dangerous person where expert finds respondent suffers from antisocial personality disorder and paraphilia NOS hebephilia); In re Matter of Civil Commitment of K.H., 2008 WL 4648460 (unpublished) (N.J. Super.A.D. 2008) (civil commitment where expert finds respondent suffers from paraphilia NOS and hebephilia and personality disorder NOS with narcissistic and anti-social traits); In re Matter of Civil Commitment of E.J.S., 2007 WL 1038894 (unpublished) (N.J. Super. A.D. 2007) (upholds continued commitment where diagnosis of paraphilia NOS hebephilia is contested); In re the Detention of Wayne Atwood, 2005 WL 974042 (unpublished) (Iowa App. 2005) (finding ample record evidence on which a jury could have found respondent's hebephilia to be a mental abnormality justifying his commitment without reliance on alcohol dependency or depression evidence); In the Matter of the Civil Commitment of V.A., 357 N.J. Super. 55 (Superior Court of New Jersey 2003);  In the Matter of Martinelli, 649 N.W.2d 886, 891 (Court of Appeals Minnesota 2002) ( "the evidence as a whole establishes a diagnosis of a mental disorder or abnormality (hebephilia and antisocial personality disorder) which is linked to a difficulty in controlling behavior that is properly described as serious.").

In the face of the weight of the scientific and legal evidence of the existence of Paraphilia NOS hebephilia, the Respondent has only offered Dr. Bard's conclusory and contradictory denials that such a condition does not exist as a serious mental disorder,

abnormality or illness.

Dr. Bard argues that attraction to teenage girls is normal for adult males. Tr. 2/10/09 at 79. Yet, he also concedes that it is not normal for men to act on their arousal to 13 year old children. Tr. 2/10/09 at 176. Dr. Bard also conceded that normal men do not selectively pursue 13 year old children for sex. Id. Indeed, Dr. Howard Barbaree, a researcher respected by Dr. Bard, testified in Abregana that "I suppose that you could make the argument that there may be a significant numbers of individuals in the general population who have a sexual interest in individuals in [adolescents] but who never act on it. Mr. Abregana has and so, therefore, that would indicate a more serious - more serious involvement in that sexual interest." Respondent's Pretrial Memorandum, Exhibit C at 38 [D. 93].

Even if Dr. Bard's statements – that sexual attraction to adolescents is normal for grown men – are accurate, in this case, Carta's attraction was anything but normal and caused him "clinically significant distress or impairment in social, occupational, or other important areas of functioning." Government Exhibit 11(DSM-IV-TR at 566). Carta's sexual preoccupation with adolescents led him to act in an illegal manner multiple times. It led him to a lengthy federal prison sentence as a result of his conviction on child pornography charges. It led him to obsessively watch child pornography for 70 to 100 hours a week, and led him to neglect his own hygiene and job.

Even where there is a disagreement among respected professionals in the field, such disagreements do not preclude the court from finding that the government has met

its burden as to whether a respondent suffers from a serious mental illness abnormality or disorder.  Disagreements between psychiatric professionals on definitions do not tie the government's hands in setting the bounds of its civil commitment laws.  "In fact, it is precisely where such disagreement exist that legislatures have been afforded the widest latitude in drafting such statutes . . . As we have explained regarding congressional enactments, when a legislature "undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation."  Kansas v. Hendricks, 521 U.S. 346, 360 at n. 3 (1977) (internal citations omitted).  As the Supreme Court stated in a later case, "the science of psychiatry, which informs but does not control the ultimate legal determinations, it is an ever-advancing science, whose distinctions do not seek precisely to mirror those of the law."  Kansas v. Crane, 534 U.S. 407 at 413 (citing the DSM-IV and noting the imperfect fit between the questions of ultimate concern to the law and the information contained in the [DSMs] clinical diagnosis).

Accordingly, the government has proved that Carta suffers from a serious mental illness, abnormality or disorder – namely, Paraphilia NOS (hebephilia).   While this evidence alone would be sufficient to satisfy the second element of the statute, nevertheless, Carta suffers from other serious mental illnesses, abnormalities or disorders which in combination certainly satisfy the second element.

**2. Personality Disorder with Antisocial and Borderline Traits**

Dr. Phenix also has diagnosed Carta as suffering from a personality disorder with

antisocial and borderline traits.  The DSM-IV-TR defines a personality disorder as an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has an onset in adolescence or early adulthood, is stable over time and leads to distress or impairment. DSM-IV-TR at 685.

Dr. Phenix testified that Carta has exhibited a number of anti-social personality disorder traits.  For example, since the age of 16 and throughout his adult life, has accumulated many arrests, most resulting in convictions, for various types of criminal activity.   After dropping out of high school, he lived a life dependent on illicit drugs, criminal activity, with little community stability or gainful employment.  He has threatened various family members, including his mother, father, sister, and sister's boyfriend.  He has retaliated against and attempted to humiliate his sexual partners by publishing details of their sexual behavior.   Dr Phenix testified that such behavior contributed to her diagnosis that Carta suffers from a personality disorder with antisocial traits.

Dr. Phenix testified that Carta has exhibited a number of traits of borderline personality disorder including: his attempted suicide after his wife ended their brief marriage; after being spurned by his girlfriend Brenda and boyfriend Frederick, his efforts to devalue both persons by disclosing over the internet and with flyers intimate details of their sex lives; his behavioral impulsivity through the use of illegal drugs and alcohol; and his demonstrated affective instability marked by irritability, aggression and

-13-

hostility towards others including family members.

While the government submits that a diagnosis of Paraphilia NOS (hebephilia) is sufficient to meet the requirements of the second element of the Adam Walsh Act, given the other diagnosis which also represent serious mental illnesses, abnormalities or disorders, in combination, all of Carta's mental conditions taken together, more than meet the government's burden of proof.[11]

### C. As A Result Of A Serious Mental, Illness, Abnormality, or Disorder, Carta Would Have Serious Difficulty In Refraining From Sexually Violent Conduct Or Child Molestation If Released

The final element required for civil commitment under the Adam Walsh Act is that, as a result of his mental illness the respondent "would have serious difficulty in refraining from sexually violent conduct and/or child molestation, if released from confinement."  18 U.S.C. § 4247(a)(6).  Because Congress did not further define or explain its use of the phrase "serious difficulty in refraining from," this court is left with the plain meaning of the words used.

In Hendricks, however, the Supreme Court recognized that the Kansas civil commitment statute required only proof of the respondent's *risk to reoffend* if released.  521 U.S. at 357 (noting statute required proof of "likelihood" of committing sexually violent conduct)."[12]  Thus, the statute does not require proof that a particular respondent

---

[11] Dr. Phenix also diagnosed Carta with various substance abuse problems.

[12] The government has not found a state civil commitment statute that uses precisely the same language as the Adam Walsh Act, but the wording of the Kansas civil commitment statute is similar and is the statute examined by the Supreme Court in Hendricks.  The statute

will reoffend, as Congress presumably recognized such a burden is impossibly high, but rather requires an assessment of the risk a respondent presents of reoffending.

The evidence has shown, through expert testimony and accompanying documents, that, given his history and his diagnosis, Carta will have serious difficulty in refraining from sexually violent conduct and/or child molestation if he is released. Carta is at a high risk to reoffend on the basis of his scores on various actuarial instruments, such as the Static-99 and an evaluation of dynamic risk factors.[13]

Here, both Dr. Bard and Dr. Phenix used the same methodology to assess risk. They each used two of the same actuarial instruments - the Static-99, and the MnSOST-R. In addition, Dr. Bard used a third actuarial instrument, the RRASOR. They also examined the same dynamic risk factors - intimacy deficits, sexual self-regulation and general self-regulation. They, however, reached different conclusions. The government submits that Dr. Phenix's opinion that Carta is a sexually dangerous person is supported by clear and convincing evidence and should be adopted by this Court.[14]

---

"establishes procedures for civil commitment of persons who, due to a 'mental abnormality' or a 'personality disorder,' are likely to engage in 'predatory acts of violence.'"). Kan. State. Ann. §59-29a01, et seq. (1994).

[13] The Static-99, like other actuarial instruments, looks at existing risk factors for sexual recidivism and calculates a total score that corresponds to various risk categories, all based on a sex offender's personal history. These actuarial instruments are accepted in the field, and are moderate predictors of risk of recidivism.

[14] Respondent has attempted to challenge Dr. Phenix's credibility indirectly and not in accordance with Rule 608(b) of the Federal Rules of Evidence. Rule 608(b) requires that specific instances of conduct of a witness for purpose of attacking character other than a conviction of a crime may not be proved by extrinsic evidence. Respondent has raised a

**1.      The Actuarial Instruments Support a Finding of Sexual Dangerousness**

It is generally accepted in the sex offender field that validated actuarial risk assessment instruments provide a more accurate and reliable assessment of a sex offender's likelihood of reoffending than even the best and most experienced clinical judgments.  See United States v. Shields, 2008 WL 544940, *2 (D. Mass. Feb. 26, 2008) (finding that actuarial risk assessments are reliable under Daubert, in part because they "are generally accepted as a reliable methodology within the relevant scientific community and they have been subject to peer review"); United States v. Shields, 597 F. Supp.2d 224, 236 (D. Mass. 2009).

The Supreme Court of Illinois considered the use of actuarial risk assessment instruments in a case that questioned their admissibility under Frye v. United States, 293 F. 1013 (D.C. Cir. 1923); In re: Commitment of Stephen E. Simons, 213 Ill.2d 523, 821 N.E. 2d 1184 (2004).  The court concluded: "[W]hether or not actuarial risk assessment is subject to Frye, there is no question that it is generally accepted by professionals who assess sexually violent offenders and therefore is perfectly admissible in a court of law.  As of this writing, experts in at least 19 other states rely upon actuarial risk assessment in

---

reported decision, In re Angela Coffel, 117 S.W.3d 116, 128 (Mo. App. 2003), both in his pretrial memorandum [D.93 at 3 n. 2] and during closing argument.  Tr. 2/11/09 at 138-9.  Perhaps with Rule 608(b) in mind, Respondent did not attempt to cross Dr. Phenix on this directly.  Indeed, in In re Johnson, 2006 Wash. App. Lexis 501(2006), an appellate court upheld a lower court's denial of a cross of Dr. Phenix on the Coffel case because it was not probative of truthfulness and Respondent's were trying to use it to show an instance of alleged speculation.  Respondent should not be allowed to back-door what would apparently be otherwise prohibited cross-examination.

forming their opinions on sex offenders' risks of recidivism." Simons, 213 Ill.2d at 535, 821 N.E. at 1192 (citations omitted).[15]

In considering the risk assessment instruments and the established rates of recidivism, terminology, again, is important. The rates of recidivism associated with the different scores are what experience and research have established as the rates at which all sex offenders (males) with particular scores will recidivate over different periods of time. The rates should not be viewed as a prediction of whether any particular respondent will reoffend, and that is certainly not what the Adam Wash Act requires this Court to determine. Risk assessment reoffense rates are most helpful when viewed in light of the dangerousness "element" of the statute, which requires this Court to determine, among other things, whether the respondent would have serious difficulty in refraining from sexually violent conduct or child molestation if released. Because Carta credibly falls within the high-risk category of sex offenders by one or more validated risk assessment instruments, such evidence is a strong indication that he meets the dangerousness "element" of the Adam Walsh Act.

Here, Dr. Phenix, a co-author of the Static-99 coding manual, assessed Carta a score of 6 placing him in the highest category of sexual recidivism. Dr. Bard assessed

---

[15] As the Adam Walsh Act was enacted in 2006, and state civil commitment statutes for sex offenders have existed in many states for a long time, almost all reported decisions are from state courts. The Simons case from the Supreme Court of Illinois is particularly instructive, as the opinion includes a thorough review of case law from other jurisdictions with sex offender civil commitment statutes, as well as the literature in the sex offender field, in arriving at its holding that risk assessment instruments such as the Static-99 are admissible on the issue of sexual dangerousness.

Carta a score of 5 placing him in the moderate to high category for risk of sexual recidivism. However, as Judge Saris recently noted, "[a]n offender's risk may be higher or lower based on other factors not adequately measured (or measured at all) by the actuarial instrument." Shields, 597 F. Supp. at 237. Accordingly, each expert also examined other dynamic factors. Indeed, Judge Saris found that "while I have considered [the Respondent's] scores on the actuarial instruments, these scores are not the primary basis upon which I rest my conclusion of sexual dangerousness. In fact, I afforded them little weight in my final analysis. Rather, as detailed above, I focused on [the Respondent's] past conduct, lack of successful sex offender treatment to date, and the testimony of the experts *as a whole* (not simply their predictions on the actuarial instruments)." Id. at 236 n. 18 (emphasis in original).

### 2. An analysis of dynamic risk factors supports a finding of sexual dangerousness

Carta has never seriously engaged in sex offender treatment, despite having the opportunity to do so. United States v. Shields, 597 F.Supp.2d 224, 239 (D. Mass. 2009) (Saris, J.)[16]. He actively resisted treatment in a controlled environment as a result of his continued cognitive distortions. Indeed, both Dr. Wood and Dr. Phenix found that he had engaged in the exact behavior in prison that led to his sexually offending against children outside of that environment. That does not bode well for Carta, who, if released would be expected to complete treatment with all the other distractions of the outside world

---

[16] Dr. Bard admits that Carta needs treatment. Tr. 2/11/09 at 104.

within the limited time period of his supervised release.  In addition, both experts testified that a failure to complete sex offender treatment increases the risk of sexual recidivism.

In addition, Carta has no support from family or otherwise in the outside world.  As Dr. Phenix testified, social associations are a significant predictor of general recidivism.  Tr. 2/10/09.  Carta has shown no ability in the past to form long-term healthy relationships that will help him succeed in the outside world and there is no reason to believe he will be able to do so now.

He has not shown an ability to engage in sexual self-regulation such that he can control his desires in such a way that will enable him to succeed in the outside world.  Even in a controlled prison environment, his sexual attraction for the younger inmates in his sex offender treatment program deprived him of the ability to get the treatment that he needs.  Tr. 2/10/09 at 31.   Nor has Carta shown any ability to regulate his general behavior in the outside world as evidenced by his numerous convictions, his threats to his family members and his desire to suffocate those with whom he has a relationship.

As a result, as Carta has not successfully completed treatment, has numerous unaddressed problems that are predictive of future sexual recidivism, and in light of his serious offense history, this Court should conclude that Carta will have serious difficulty in refraining from sexually violent conduct or child molestation if released.  Id.

### III.     CONCLUSION

For the foregoing reasons, and based on the evidence admitted at trial, the government respectfully requests that this Court find that Carta is a sexually dangerous

and civilly commit him to the custody of the Bureau of Prisons.

Dated: May 11, 2009

          Respectfully submitted,

          MICHAEL K. LOUCKS
          Acting United States Attorney

By:   /s/ Jennifer C. Boal
       Jennifer C. Boal
       Eve Piemonte Stacey
       Assistant U.S. Attorneys
       John Joseph Moakley U.S. Courthouse
       1 Courthouse Way, Suite 9200
       Boston, MA 02210
       (617) 748-3100

## Certificate of Service

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on May 11, 2009.

          /s/Eve Piemonte Stacey
          Eve Piemonte Stacey
          Assistant United States Attorney