UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * *
UNITED STATES OF AMERICA      *
                              *
          vs.                 *      CIVIL ACTION
                              *      No. 07-mc-10057-JLT and
TODD CARTA                    *      No. 07-12064-JLT
                              *
* * * * * * * * * * * * * *

* * * * * * * * * * * * * *
UNITED STATES OF AMERICA      *
                              *
          vs.                 *      CIVIL ACTION
                              *      No. 07-mc-10064-JLT
WESLEY GRAHAM                 *
                              *
* * * * * * * * * * * * * *

* * * * * * * * * * * * * *
UNITED STATES OF AMERICA      *
                              *
          vs.                 *      CIVIL ACTION
                              *      No. 07-mc-10066-JLT
JACK McRAE                    *
                              *
* * * * * * * * * * * * * *
```

BEFORE THE HONORABLE JOSEPH L. TAURO
UNITED STATES DISTRICT JUDGE
**MOTION HEARING**

A P P E A R A N C E S

        DEPARTMENT OF JUSTICE
        Federal Programs Branch
        20 Massachusetts Avenue, N.W.
        Room 6107
        Washington, D.C. 20530
        for the United States
        By: Helen H. Hong, Trial Attorney

1  **APPEARANCES, CONTINUED**

2

3          OFFICE OF THE UNITED STATES ATTORNEY
           1 Courthouse Way, Suite 9200
4          Boston, Massachusetts 02210
           for the United States
5          By:  Rayford A. Farquhar, AUSA

6

7          FEDERAL DEFENDER OFFICE
           408 Atlantic Avenue, Suite 328
8          Boston, Massachusetts 02210
           for the Respondent Todd Carta
9          By:  Page Kelley, Esq.

10

11         FEDERAL DEFENDER OFFICE
           408 Atlantic Avenue
12         Boston, Massachusetts 02110
           for the Respondent Wesley Graham and Jack McRae
13         By:  Stylianus Sinnis, Esq.

14

15         FEDERAL DEFENDER OFFICE
           408 Atlantic Avenue
16         Boston, Massachusetts 02110
           for the Respondents Carta, Graham and McRae
17         By:  Judith H. Mizner, Esq.

18

19                              Courtroom No. 20
                                John J. Moakley Courthouse
20                              1 Courthouse Way
                                Boston, Massachusetts 02210
21                              August 22, 2007
                                11:50 a.m.

22

23                  CAROL LYNN SCOTT, CSR, RMR
                      Official Court Reporter
24              One Courthouse Way, Suite 7204
                 Boston, Massachusetts 02210
25                      (617) 330-1377

1               **P R O C E E D I N G**

2            **THE CLERK:**  All rise for the Honorable Court.

3            **THE COURT:**  Good morning.  Sorry to keep you

4    waiting.  Several things happened to prevent me from being

5    here.

6            **THE CLERK:**  This is MBD matter 07-10057, United

7    States of America versus Todd Carta, and MBD matter

8    07-10064, United States of America versus Wesley Graham, and

9    MBD matter 07-10066, United States of America versus Jack

10   McRae.

11           Counsel please identify themselves for the record.

12           **MS. HONG:**  Good morning, Your Honor.  Helen Hong,

13   Department of Justice in the civil division at the Federal

14   Programs Branch on behalf of the government.

15           **THE COURT:**  Okay.

16           **MR. FARQUHAR:**  Good morning, Your Honor.  Ray

17   Farquhar for the government.

18           **THE COURT:**  Okay.

19           **MS. KELLEY:**  Good morning.  Page Kelley on behalf

20   of Todd Carta.

21           **THE COURT:**  All right.

22           **MR. SINNIS:**  Good morning, Your Honor.  Stelio

23   Sinnis.  I'm here for Jack McRae and Wesley Graham.

24           **THE COURT:**  Okay.

25           **MS. MIZNER:**  Good morning, Your Honor.  Judith

```
 1   Mizner on behalf of all three.

 2            THE COURT:  Okay.  Anybody else have a special

 3   appearance here?

 4            Well, sit down, please.  We have a lot to get

 5   through here.  There is a lot I want to understand.  And I

 6   think -- is someone going to speak for the defendants?

 7            MS. MIZNER:  I am, Your Honor.

 8            THE COURT:  You are.  You are all welcome to speak.

 9   I just wanted to know whether someone was going to carry the

10   ball.

11            I start off with this facial challenge.  And I

12   would like to know what you say the standard is.  What you

13   have done is you filed a facial challenge; is that right?

14            MS. MIZNER:  Yes, Your Honor.

15            THE COURT:  And you have chosen not to file

16   anything more specific than that; haven't you?

17            MS. MIZNER:  At this time, yes.  This is a

18   challenge that we are saying applies across the board.

19            THE COURT:  Okay.  Now, so tell me what you say the

20   test is.  What is the standard?  Is it Salerno?  What is the

21   standard?

22            MS. MIZNER:  In terms of the jurisdiction for

23   standing to bring a facial challenge?

24            THE COURT:  No, that and how do you win?  What do

25   you have to prove in order to prevail here?
```

1          **MS. MIZNER:**  Well, I think it depends on the

2    particular issue being addressed.  We have raised a number

3    of different challenges.

4          For example, the due process challenges.  We are

5    saying regardless of whether or not the statute could

6    conceivably be applied for a class of people, the due

7    process issues make the statute unconstitutional as --

8          **THE COURT:**  Well, that is not a facial challenge

9    though.

10         **MS. MIZNER:**  It is.  We are saying that the statute

11   facially suffers from procedural protections that apply

12   across the board and, therefore, apply to any person as to

13   whom civil commitment is being sought.

14         I would note that City of Chicago v. Morales,

15   footnote 22, addresses the concept of whether Salerno,

16   whether the Salerno test of the statute is inapplicable,

17   under any set of circumstances applies in all instances and

18   I think that the City of Chicago says that it does not.

19         It may be one test.  It's not the only test.  Just

20   as Blockburger may generally be the test for when you have

21   two statutes that punish the same offense, it is not the

22   only test.

23         And in Chicago v. Morales they looked at the

24   Chicago loitering statute and found that it violated due

25   process.  It was a vague and arbitrary restriction on

1    personal liberty even though you could conceive of

2    circumstances where it might apply to certain individuals.

3         I think Lopez and Morrison, which deal with

4    Commerce Clause challenges, also have some bearing on this

5    issue saying that if a statute is outside congressional

6    authority to promulgate, it can't be applied, that it's

7    facially invalid.

8         And here we are saying that there is no enumerated

9    power for which, to which Congress can tag this statute.  So

10   it would have been unconstitutional as applied, as applied

11   to all, and facially invalid because it cannot be applied

12   constitutionally.  Congress didn't have the power to

13   promulgate it.

14        So I'm saying I guess we meet the Salerno test, if

15   that's the test the Court wishes to apply, because we are

16   saying, for these challenges we are saying that it cannot be

17   applied to anybody, but also suggesting that the Supreme

18   Court in Chicago has said that Salerno is not the only test.

19        I would suggest that the government has parsed out

20   a class of persons who are committed to the custody of the

21   Attorney General pursuant to 4241 and said that it's clear

22   that 4248 would apply to them.

23        **THE COURT:**  Well, wait a minute.  Yes.

24        (Whereupon, the Court and the Clerk conferred.)

25        **THE COURT:**  You will have to excuse me.  I have to

 1    take this call.

 2            (Recess.)

 3            **THE COURT:**  Everybody, thank you for excusing me.

 4    I appreciate it.

 5            Getting back, I guess -- let me start all over

 6    again in a way.

 7            Are you really making an as applied argument to me

 8    or is it a facial -- you said -- let me tell you what is on

 9    my mind.  I think you made the argument that the Necessary

10    and Proper crutch that they may want to lean on really isn't

11    ripe because it is really an exercise of police powers that

12    only a state has the right to exercise.  I mean, is that --

13            **MS. MIZNER:**  Well, the --

14            **THE COURT:**  And then as far as the Commerce Clause,

15    I am going to be asking, you know, if they are relying on

16    the Commerce Clause, what aspect of the Commerce Clause

17    applies here.

18            But I really want to know what your -- what do you

19    want me to do?

20            **MS. MIZNER:**  Well, we are saying that, certainly as

21    to any of these three individuals who are being held, who

22    are here only because they are in federal custody for some

23    other reason, that certainly as applied --

24            **THE COURT:**  Their custody would normally have

25    ended?

1            **MS. MIZNER:**  Yes.

2            **THE COURT:**  Go ahead.

3            **MS. MIZNER:**  That civil commitment is being sought

4    as to them only because they are in the custody of the

5    Bureau of Prisons.  But certainly as applied to them this

6    statute is unconstitutional for the variety of reasons that

7    we state --

8            **THE COURT:**  If they had fortuitously been -- walked

9    out the gates of the jail, then this couldn't happen, there

10   would have to have been a whole criminal proceeding

11   initiated if there, indeed, was such a proceeding that was

12   available --

13           **MS. MIZNER:**  They could not be civilly committed

14   under 4248 if they walked out.

15           **THE COURT:**  Or anything else.

16           **MS. MIZNER:**  Or anything else that I'm aware of.

17           But I think that it's also fair to say that they're

18   facial challenges in the sense that we are saying that for

19   the due process arguments and that for the congressional

20   authority arguments, that there is no set of circumstances

21   under which this statute, this particular statute can be

22   held to be constitutional.

23           Congress may have the ability to pass --

24           **THE COURT:**  When you are -- forgive me for

25   interrupting you.  I know you have got this down cold and I

```
1   have got a million questions to ask you.  If I don't ask the

2   question, I will forget what it was, which I think I just

3   did.

4          (Laughter.)

5          THE COURT:  Well, go ahead with your argument.  I

6   will think of it.

7          MS. MIZNER:  In terms of the jurisdiction for the

8   facial challenge, I'd also like to address the government's

9   suggestion that Greenwood -- basically as I read --

10         THE COURT:  Oh, I know what it was that I was going

11  to say.

12         MS. MIZNER:  Okay.

13         THE COURT:  When you are making this sort of a

14  facial challenge, do we have to call on you to eliminate

15  every possibility or is it the government's burden once the

16  facial challenge has been made to come forward with some

17  theory where the statute or whatever it is would be saved?

18         MS. MIZNER:  Is this a burden shifting situation?

19         THE COURT:  Well, I mean, you are ticking off the

20  Commerce Clause doesn't apply, the Necessary and Proper

21  doesn't apply.  You can go to the index of the Criminal Code

22  I suppose and say all the things that don't apply.

23         But is that your burden or is it their burden --

24         MS. MIZNER:  I think it is --

25         THE COURT:  -- once you raise it to demonstrate
```

1    that someplace there is a use of this that is

2    constitutional?

3          **MS. MIZNER:**  I think under the <u>Salerno</u> test it

4    would be the government's burden.  We have said that it

5    cannot be applied.  And we looked at the Commerce Clause and

6    Necessary and Proper Clause as being the areas that we

7    viewed as most likely for the government to try to rely on.

8          **THE COURT:**  But they are the ones that --

9          **MS. MIZNER:**  Yes, we believe that it is their

10   burden to come forward and show once we have filed a facial

11   challenge.

12         **THE COURT:**  All right.  Well, let's hear from them

13   then.  Go ahead.

14         What reliance do you place on the Commerce Clause,

15   if anything, and the Necessary and Proper?  How can you

16   avoid the argument that you are really just exercising

17   police powers that belong to the state?

18         **MS. HONG:**  Sure.  Certainly.  Oh, before I get to

19   the Commerce Clause, I'd just like to address what

20   Ms. Mizner said about the burden and who has the burden to

21   prove that no set of circumstances or under no set of

22   circumstances is the statute constitutional.

23         **THE COURT:**  Go ahead.

24         **MS. HONG:**  Under <u>United States versus Salerno</u> the

25   Court has written that it's the challenger who must

1   establish that no set of circumstances exists under which

2   the act would be valid.  And that would be at 745 -- 481

3   U.S. 745.  That's respondent's burden to show that under no

4   set of circumstances is the act a constitutional exercise of

5   Congress's authority.  And that's actually for good reason.

6          It is really a corollary to the sort of typical

7   doctrine of the Court deciding a case on the narrowest

8   grounds available.  And that each respondent must have

9   standing in effect, must have injury, in fact, must show

10   that the facts of their case showed that a case -- that a

11   statute is unconstitutional.  Here respondents cannot do

12   that.

13          Turning to your question about the Commerce Clause

14   and why respondents cannot show that this act is

15   unconstitutional as applied to every individual, Greenwood

16   versus United States answers that question.

17          The act applies to three categories of individuals.

18   The first being persons in the custody of the Bureau of

19   Prisons.  The second being persons under the Attorney

20   General's custody under Section 4241(d).  And the third

21   being persons against whom all criminal charges have been

22   dropped owing to a mental incapacity or mental illness.

23          The United States Supreme Court in Greenwood versus

24   United States stated that the United States Government may

25   commit, civilly commit individuals under 4241(d) who have

```
 1    been found to be incompetent to stand trial if they also

 2    pose a danger to --

 3           THE COURT:  But we don't have that here.  In other

 4    words, none of the people who are before me now are either

 5    committed or against whom criminal charges have been

 6    dismissed because of mental condition.

 7           MS. HONG:  The respondents --

 8           THE COURT:  The only thing we have here is somebody

 9    who is in the custody of the Bureau of Prisons; isn't that

10    right?

11           MS. HONG:  But what respondents are asking --

12           THE COURT:  Is that right?

13           MS. HONG:  That's correct.  No one here --

14           THE COURT:  So we are not dealing with two and

15    three, we are just dealing with one.

16           MS. HONG:  That's correct.

17           THE COURT:  And what is troublesome is that one,

18    relying on one sort of begs the question because the only

19    reason that they are in prison, so the argument goes, is

20    because they are being improperly held.

21           MS. HONG:  Well --

22           THE COURT:  In other words, under normal

23    circumstances they should be out the door.

24           MS. HONG:  Right.

25           THE COURT:  But this statute gives administrative
```

1    determination sufficient clout to keep them in jail.

2    Otherwise they wouldn't be in jail.

3         So you are keeping them in jail and then relying on

4    that as being someone who is in the custody of the Bureau of

5    Prisons as Greenwood indicates.

6         **MS. HONG:**  Right.  And that's not entirely correct.

7         Each of the respondents was lawfully in the custody

8    of the federal government or the Bureau of Prisons at the

9    time they were certified to be a sexually dangerous person.

10        It's only by virtue of the last sentence of Section

11   4248(a) which states that a person's release shall be stayed

12   during the pendency of the certification process that the

13   respondents are still held now.

14        But at the moment that the certification occurred

15   the persons were as required by statute in the custody of

16   the Bureau of Prisons.

17        **THE COURT:**  Okay.

18        **MS. HONG:**  And what respondents are asking, and

19   your question earlier is are these respondents, do they fall

20   under Section 4241(d) or do they fall under the category of

21   individuals, the third category of individuals specified in

22   the act.

23        What respondents are asking you to do today is to

24   hold that the statute is unconstitutional completely, that

25   on its face Congress has no authority to promulgate this

1    act.  But because under the facial test articulated by

2    Salerno there are circumstances under which Congress may

3    without question provide for the civil commitment of persons

4    in its custody, respondents' facial challenge must fail and

5    their motion to dismiss must be denied.

6            **THE COURT:**  Well, where do you find that authority

7    on these circumstances?  In other words, under the Commerce

8    Clause point, give me a Commerce Clause example that will

9    end the inquiry.

10           **MS. HONG:**  Right.

11           **THE COURT:**  And then after that give me a Necessary

12   and Proper inquiry that will end, an example that will end

13   the inquiry.

14           **MS. HONG:**  If we move beyond the facial question

15   and ask how as applied to these individual respondents is

16   the statute constitutional, that question is answered by

17   United States versus Carey and progeny that discusses the

18   Necessary and Proper Clause.

19           Congress has the authority --

20           **THE COURT:**  No, we are talking about Commerce.

21           **MS. HONG:**  Yes.  And the Commerce Clause informs

22   Congress's Necessary and Proper powers.

23           Here we are suggesting that Congress has the

24   necessary and proper authority in order to properly exercise

25   its Commerce Clause authority because Congress has --

1      **THE COURT:**  But what part of Commerce, the Commerce

2      Clause kicks in here?  It is not a gun next to a schoolyard.

3      I mean, not everything kicks in; right?

4      **MS. HONG:**  No, except Congress has the power to

5      criminalize certain sexually violent conduct and child

6      molestation.  There are statutes in Title 18 of the United

7      States Code where Congress has prohibited certain violent

8      conduct under the Commerce Clause.

9      **THE COURT:**  Isn't that usually if it is a

10     transportation in interstate commerce?  I mean, we are

11     talking about photographs and things like that.  Don't they

12     have to travel in interstate commerce?

13     **MS. HONG:**  And that's the constitutional, the

14     Commerce Clause hook, that's correct.  And United States

15     versus --

16     **THE COURT:**  So what is the hook here?  These people

17     aren't traveling in interstate commerce.

18     **MS. HONG:**  No, it's Congress's authority and power

19     to criminalize such conduct.  If Congress has the power to

20     criminalize, for example, the transportation of a child

21     across state borders in order to molest a child, and

22     Congress also has the necessary and proper authority to

23     prevent that future occurrence of that crime, it's precisely

24     what the Court held in United States versus Perry.

25          There the court --

1          **THE COURT:**  What would the criminal statute read?

2     What would the crime be?

3          **MS. HONG:**  Under, if you look at 18 U.S.C Section

4     2251, 18 U.S.C. Section 2252 there are a number of federal

5     sex crimes that have been proscribed by Congress.  So, for

6     example, there is 18 U.S.C. Section 2241 through 2245 which

7     is sexual misconduct; 18 U.S.C. Section 2251 through 2252,

8     which proscribes the sexual exploitation of children.

9          Those crimes are properly, undoubtedly proper

10    exercises of Congress's authority under the Commerce

11    Clause --

12         **THE COURT:**  But someone has to have done something.

13    In other words, you have the statute, you have a number of

14    words put together that are described as being antisocial

15    behavior which we will deem to be criminal and, therefore,

16    punishable but somebody has to have done something.

17         Here the "crime" would be are you going to do

18    something.  It is almost an injunctive sort of approach to

19    the situation as opposed to punishing someone or trying

20    somebody and then punishing them for conduct they have done.

21         Here there has been no conduct alleged.  You are

22    saying that they look like they might do it some day so,

23    therefore, we are going to detain them.

24         **MS. HONG:**  Well, we are looking at the authority

25    question, whether Congress has the authority to prohibit

1   persons properly within federal custody who the BOP or a

2   psychologist or a psychiatrist deem to have some sort of

3   mental illness, abnormality or defect that would make it

4   likely that they would go out and commit sexual violence or

5   molest children, then Congress has the authority to do so.

6        Here we are looking at, when we are examining

7   respondents' challenge here, they're challenging Congress's

8   authority to proscribe this conduct in all circumstances.

9   And --

10       **THE COURT:**  They are saying that you do that at the

11   state level, not the federal level.  In other words, this is

12   really an exercise of police power.  You are proscribing

13   conduct.

14       **MS. HONG:**  And if --

15       **THE COURT:**  You are not using it as a

16   jurisdictional hook to any interstate travel.

17       **MS. HONG:**  Yes.  And certainly though the Supreme

18   Court and courts throughout the country have held that the

19   federal government does have the authority in limited

20   circumstances to legislate for the health and mental welfare

21   of individuals.

22       For example, Section -- 18 U.S.C. Section 4246, for

23   example, will allow the federal government to civilly commit

24   individuals who have a mental disease or defect who

25   nonetheless pose a danger to the community.

1          **THE COURT:**  But they have to have already been

2    committed.

3          **MS. HONG:**  The persons have been hospitalized at

4    some point.

5          **THE COURT:**  Hospitalized, yes.

6          **MS. HONG:**  But the fact of the hospitalization

7    doesn't inform whether Congress has the authority, the power

8    to legislate and civilly commit individuals.

9          **THE COURT:**  Suppose that people are just walking

10   down the street.  You couldn't just, you couldn't just say

11   you look like you might be potentially troublesome and then

12   take them off the street.

13         **MS. HONG:**  Right.  And that is certainly not the

14   statute we have here.

15         If you look at Section 4248(g), for example,

16   Congress has legislated and stated where the federal

17   interest is extinguished, meaning a charge is dismissed

18   because of a reason that is not related to the mental health

19   or mental capacity of an individual, Congress has legislated

20   and stated that the federal government should try to make

21   efforts for states to institute civil proceedings and civil

22   commitment proceedings.  And if states refuse to do so, the

23   federal government must release these individuals even if

24   they are dangerous.

25         What Congress has done is narrowly tailor, narrowly

1    draw the lines in a class of individuals who are subject to

2    the civil commitment proceeding.

3          **THE COURT:**  Let me ask you the same question a

4    different way, or maybe it is a different question.

5          Under the Necessary and Proper rubric, does the

6    federal government have the authority to pass statutes that

7    would assist the states in exercising police powers over

8    people like this?

9          **MS. HONG:**  What Congress must do is hook its

10   Necessary and Proper --

11         **THE COURT:**  Not just giving money.  In other words,

12   not like all those programs with more prosecutors, more cops

13   on the street, but, I mean, to come up with a, under the

14   rubric of the Necessary and Proper, assisting the executive,

15   like assisting the executive, you know, in the performance

16   of the executive duties?  Is that same responsibility and

17   power available to assist the states in meeting their

18   responsibility?

19         **MS. HONG:**  Yes.  There are certainly some cases

20   that provide for cooperative federalism, cooperative

21   federal/state endeavors.  But that's not the statute that we

22   have here.

23         And as you noted, the federal government may

24   certainly assist states with spending clause powers but

25   Congress must tether its Necessary and Proper Clause to one

1    of its enumerated powers, which has been done here, which is

2    Congress's Commerce Clause authority to proscribe certain

3    sexual conduct and then not release persons who are in the

4    federal home, under federal roofs in federal custody, not

5    release those dangerous persons knowing that those persons

6    are dangerous, going to commit the sexually violent acts and

7    child molestation conduct that underlies the federal crimes.

8         The Third Circuit Court, the court in United States

9    versus Perry precisely found that in an analogous situation

10   that for the safety of the community, which is typically a

11   state police power, that the federal government, if the

12   federal government has custody over an individual, the

13   federal government is not bound by the Constitution to

14   release those individuals knowing that they would go out and

15   harm the community.

16        Because in Perry the Congress had authority to

17   proscribe certain drug and gun offenses.  Congress then had

18   the Necessary and Proper authority to withhold or hold and

19   civilly commit in effect individuals who would go out and

20   recommit those federal offenses.

21        Similarly here we have Congress having the

22   authority to proscribe the sexual conduct under Title 18

23   because they are Commerce Clause powers and then Congress,

24   therefore, has the Necessary and Proper Clause authority to

25   ensure that those crimes are not committed.

1              <u>United States versus Salerno</u> --

2         **THE COURT:**  Where do we go if we do something like

3    this?  How long can they be committed?  There is no end to

4    the confinement here.  What is it, under the procedure it

5    has to be brought to a U.S. District Judge within 75 days;

6    is that how it goes?

7         **MS. HONG:**  The 75 days permits the District Court

8    Judge to order a psychiatric evaluation and that a person be

9    committed to a suitable facility for psychiatric

10   examination.

11        **THE COURT:**  When is it brought before the U.S.

12   Judge?

13        **MS. HONG:**  It is brought before the U.S. Judge as

14   soon as practicable.  As soon as the judge, if the judge is

15   not needing, for example, psychological evaluation, once the

16   certification occurs under Section 4248 the Court is

17   required to hold a clear and convincing hearing to determine

18   whether a person should be committed or not.  And the length

19   of the detention does not inform the authority of Congress

20   to legislate here.

21        You are correct, it's possible that a commitment

22   could be indefinite.  The statute provides that a person

23   shall be civilly committed until either, A, a state will

24   assume responsibility over the respondent, or, B, the person

25   is no longer sexually dangerous to others, either with or

 1   without treatment.

 2           The respondent is evaluated once a year, at

 3   least -- at a minimum once a year by the director of the

 4   facility.  The director of the facility is required to

 5   submit a report to the Court identifying whether the

 6   respondent continues to be sexually dangerous or not.

 7           The directer is also required on an ongoing basis

 8   to determine whether someone would or would not be sexually

 9   dangerous to others under a prescribed treatment program or

10   psychiatric program.

11           So certainly the length of the commitment could be

12   indefinite, although it also could be much shorter.

13           **THE COURT:**  Well, does that sort of indefinite

14   detention serve as a basis for the argument that it is

15   facially unconstitutional because it is not more specific?

16           **MS. HONG:**  Not more specific about how long a

17   person can be held?

18           **THE COURT:**  Yes.

19           **MS. HONG:**  If --

20           **THE COURT:**  Shouldn't there be some tethering here?

21   Otherwise, you could throw away the key so to speak.  And

22   wouldn't that be an unconstitutional exercise of power?

23           **MS. HONG:**  That's not actually provided for in the

24   statute.  There is no opportunity to in effect throw away

25   the key.  The respondent must be evaluated every year.

 1              The respondents themselves have a right to request

 2       a court to review their commitment every --

 3              **THE COURT:**  But, I mean, once it goes to -- maybe I

 4       don't understand it.  But once it goes to the judge, the

 5       judge has 75 days to appoint an expert to give him some

 6       guidance with respect to the underlying medical issues; is

 7       that right?

 8              **MS. HONG:**  Not quite.  Once the -- so what BOP

 9       does, what the Bureau of Prisons does is when a person is in

10       federal custody and about to come up for release, the Bureau

11       of Prisons Certification Review Panel will review whether

12       the individual is appropriate for certification, if there is

13       reasonable cause to believe that the person is sexually

14       dangerous or not.

15              And the Certification Review Panel will issue a

16       certificate stating that in their medical judgment the

17       person is a sexually dangerous person.  That certificate

18       then must be filed with the District Court which is what

19       happened here.

20              Once the District Court has that certification, it

21       either has the option of appointing a psychiatric evaluation

22       under Section 4248 or just going forward with the clear and

23       convincing hearing.  The Court is afforded at least 75

24       days -- the statute provides for a 45-day period in which to

25       conduct an --

1        **THE COURT:**  So you are saying the judge himself or

2  herself is tethered, that you either hire an expert to give

3  you a report or -- which may not come back in 75 days, but

4  if a judge decides to keep it himself or herself, then

5  presumably he has to make a decision within that 75-day

6  period; is that what you are suggesting?

7        **MS. HONG:**  It is not -- the statute doesn't require

8  that a clear and convincing hearing occur within 75 days.

9  There is no sort of deadline.

10        **THE COURT:**  Well, what is the 75 days?  What is the

11  meaning of the 75 days?

12        **MS. HONG:**  Yes, the statute provides a 45-day

13  period in which a mental evaluation may occur if ordered by

14  the Court.

15        Then upon good cause a request by the psychiatric

16  evaluator, for example, the psychiatric evaluator may

17  request an additional 30 days in which to complete the

18  report.  So there is a 75-day total period in which a

19  psychiatric report and evaluation may be conducted.

20        **THE COURT:**  Okay.

21        **MS. HONG:**  Once that report is furnished to the

22  Court and the Court is satisfied -- and under that same

23  exact statute the respondents have a right to request their

24  own evaluator who will also conduct an evaluation within

25  that same 75 days.

1          At that point the Court, if it chooses to wait the

2    75 days, may then conduct a clear and convincing hearing to

3    determine whether the respondent is actually a sexually

4    dangerous person, meaning the person suffers from a mental

5    illness, abnormality or disorder causing serious difficulty

6    in refraining from sexually violent conduct or child

7    molestation.

8          **THE COURT:**  Okay.  You have been working hard here.

9    Why don't we give you a rest for a couple of minutes.

10         What response do you have to some of these points?

11         **MS. MIZNER:**  Well, first of all, in response to --

12         **THE COURT:**  And let me ask you the leading

13   question:

14         What is wrong with the procedure which within the

15   matter of 40 days from the time of, before somebody is

16   released, gives to a federal judge, the U.S. District Judge

17   the obligation to either decide the validity of the

18   certification or to hire somebody that will assist him in

19   making that decision?  What is wrong with that?  Can you say

20   that that is an unlawful delay in detention hearing?

21         **MS. MIZNER:**  Well, first of all, I think that it

22   would -- we do argue that it violates the due process right

23   to a probable cause hearing within a more limited period of

24   time because the government certification is not a hearing

25   by a neutral detached individual.

1              It is, the government is certifying that in its

2      opinion the person is a, is subject to the commitment under

3      the statute.   It does not -- and that's it.   It then goes on

4      to go on for the 75 days for evaluation and then whatever

5      additional length of time is necessary for a hearing.

6              **THE COURT:**   Are you suggesting there should be a

7      probable cause hearing before this?

8              **MS. MIZNER:**   Yes, that's one of the arguments that

9      we made.   Due process requires a probable cause hearing

10     before you --

11             **THE COURT:**   Is there any precedent for requiring a

12     probable cause hearing involving someone who is already in

13     custody or who is -- one of the categories, the three

14     categories that we are discussing, what is it, Greenwood?

15     Is that the case?

16             **MS. MIZNER:**   Well, there are --

17             **THE COURT:**   Is there any case that says that there

18     should be a probable cause hearing?   And if so, conducted by

19     whom?

20             **MS. MIZNER:**   I believe it's Jones which says that

21     there is a -- even though a person is incarcerated that

22     there is an interest in not being transferred, someone who

23     is incarcerated, to the BOP, an interest in not being

24     transferred to a mental institution.

25             **THE COURT:**   Sure.   I understand that but I am

1    asking you a different question.

2           You are suggesting there should be a probable cause

3    hearing.  I am wondering where does it say that and who --

4           **MS. MIZNER:**  Well, the statute does not provide for

5    one.

6           **THE COURT:**  I know, but where is it read anyplace

7    that there should be one, that it should be in there?

8           **MS. MIZNER:**  There are -- it is --

9           **THE COURT:**  And who would do it?

10          **MR. EURBGS:**  The Court.  We are suggesting that the

11   Court would hold --

12          **THE COURT:**  The Court would do a probable cause

13   hearing?

14          **MS. MIZNER:**  A probable cause hearing as to whether

15   or not the standards -- whether there is probable cause to

16   believe that --

17          **THE COURT:**  Well, that is a difference without a

18   distinction, isn't it, because the statute provides for

19   that?  The statute provides for the Court to be notified

20   immediately when there has been a certification.  And at

21   that moment the judge has the option to conduct his or her

22   own hearing or to marshal some evidence in the form of

23   expert advice from a psychiatrist.

24          **MS. MIZNER:**  But the defendant has no right to a

25   hearing at that point in time.  Once the certification is

1    provided to the Court, that doesn't trigger any particular

2    time frame for holding a hearing to determine whether or not

3    the person should be held pending the final determination

4    which under the statute requires clear and convincing

5    evidence which, again, we say is --

6         **THE COURT:**  Well, it is a question of whether the

7    timetable such as it is in the statute is reasonable or is

8    it so unreasonable as to be unconstitutional?

9              **MS. MIZNER:**  And the -- there are two cases that --

10             (Pause in proceedings.)

11             **MS. MIZNER:**  There are two cases that are cited --

12             **THE COURT:**  Excuse me.  Excuse me just a minute.

13             **MS. MIZNER:**  -- on page 16.

14             **THE COURT:**  Excuse me.

15             (Whereupon, the Court and the Law Clerk conferred.)

16             **THE COURT:**  My law clerk wants to make sure that I

17   made clear to you my impression that there is no timetable

18   for a decision in the statute.  There is this 40 or 35 days

19   or whatever the initial timetable is but the judge, of

20   course, can take forever to decide the case.

21             **MS. MIZNER:**  Right.

22             **THE COURT:**  There is no consequence.

23             **MS. MIZNER:**  There is no timetable.  In terms of a

24   probable cause hearing --

25             **THE COURT:**  There is no timetable --

1          **MS. MIZNER:**  For the Court's decision.

2          **THE COURT:**  -- for a probable cause hearing either.

3          **MS. MIZNER:**  There is no requirement of a probable

4     cause hearing.

5          **THE COURT:**  No, but, I mean, even in the

6     traditional criminal sense, except for the procedure where

7     after arrest of so many days someone has to be brought

8     before a magistrate judge and all that, is that the kind of

9     procedure that you are relying on?  The regular criminal

10    procedure that we have?

11         **MS. MIZNER:**  As a matter of due process it would be

12    a question of a reasonable amount, a reasonable time.  And

13    in our response there are two cases cited holding that a

14    probable cause hearing must be held within 72 hours of an

15    involuntary commitment, Doe v. Gallinot and Luna v. Van

16    Zandt which are both district court cases, one from

17    California and one from Texas, requiring probable cause

18    hearings for involuntary commitment.

19         But I would like to go back to the Commerce Clause

20    argument that the government is making because I think that

21    they have overstated.  Simply because Congress can enact

22    some statute that penalizes, that criminalizes sexually

23    violent conduct doesn't mean, doesn't correlate to a right

24    for the unbridled type of civil commitment statute that they

25    promulgated here.  It is not tied, the civil commitment is

1   not tied to someone who has violated or is likely to violate

2   those particular statutes that the government has cited.

3          And, in fact, if you look at the definition of

4   "sexually violent conduct" that they have set out in a

5   memorandum, a preliminary memorandum defining "sexually

6   violent conduct" as any unlawful conduct of a sexual nature

7   with another person that involves certain things that talk

8   about the threat, threatened use of force but others that go

9   on to engaging in any conduct of a sexual nature with

10  another person with knowledge of having tested positive for

11  HIV or other potentially life-threatening

12  sexually-transmissible disease without the informed consent

13  of the other person to be potentially exposed.  That is

14  certainly not limited to a federal interest within the

15  Commerce Clause as are the statutes that deal with

16  transportation or crossing state lines.

17         And Perry is a case dealing with the Bail Statute.

18  And it specifically says that Congress may not, however,

19  authorize commitment simply to protect the general welfare

20  of the community at large.  And it is tied to the specific

21  offenses in the Bail Statute.  Three dealing with drugs, one

22  dealing with the use firearms in the commission of a federal

23  offense.

24         So they're reading the second presumption of

25  3142(e) as addressing only danger to the community and the

1    likelihood that the defendant will if released commit one of

2    the proscribed federal offenses.  This statute is not

3    tethered that way.  So I would suggest that it is not

4    authorized that the Congress, you can't piggyback Necessary

5    and Proper on to the Commerce Clause in this particular

6    instance.

7         And just as in Lopez the Court didn't say that

8    Congress could not address gun offenses at all.  They simply

9    said that that, the particular statute provision challenged

10   there, the school zone, wasn't supported by the Commerce

11   Clause.

12        And here you have, well, perhaps the government

13   could come up with a more narrowly tailored statute that

14   could be tethered to the Commerce Clause, the statute that

15   they passed is not, does not.  So we are for those reasons

16   saying that it is not authorized under the enumerated powers

17   of the federal government.

18        And Greenwood which authorizes civil commitment for

19   persons with pending charges and who are mentally ill and

20   incompetent may serve particular -- they talk about certain

21   federal interests, endangering the safety of officers,

22   property or other interests of the United States.

23        The fact that someone may be committed for that

24   reason doesn't translate into this overbroad commitment

25   under 4248.

 1          **THE COURT:**  The facial challenge, does it have to

 2    be to the entire statute or, for instance, just so you will

 3    know what I am thinking about, we talked about Greenwood and

 4    the three different categories.  Two and three, okay, let's

 5    say that those pass muster.  But what about one, the mere

 6    fact that someone happens to be in custody without an

 7    ability to stand trial, you know, hospitalization, anything

 8    like that, merely in the custody?

 9          Now, can we, can she and we deal with that as a

10    discrete issue on a facial basis?  Even though two and three

11    might not be unconstitutional, that one might be

12    unconstitutional?  Let's say I wanted to do that and I break

13    it up into pieces.

14          **MS. HONG:**  That's actually precisely what an as

15    applied challenge does.  And the reason --

16          **THE COURT:**  Well, as applies does that.  But she

17    is -- I keep urging her to cast it as an applied challenge

18    but she says no, it is a --

19          **MS. MIZNER:**  No, I didn't say no, Your Honor.  I

20    said that we are making --

21          **THE COURT:**  You said it is related.

22          **MS. MIZNER:**  We are saying that we -- if the Court

23    is, feels that there is not jurisdiction for a complete

24    facial challenge, we would urge the Court to, since all

25    three of these individuals are here only because they are in

1    the custody of the BOP, that the Court address it as applied

2    to that class of individuals under the statue.

3         **THE COURT:**  Paragraph one of <u>Greenwood</u>?

4         **MS. MIZNER:**  Yes.

5         **THE COURT:**  Well, if I do that, why then -- I guess

6    I want -- she answered the question yes and you sort of

7    punted on it.

8         Can I use this facial challenge as a vehicle for

9    declaring it unconstitutional on paragraph one?  In other

10   words, the fact that someone just happens to be in custody

11   as opposed to the other two categories enumerated in

12   <u>Greenwood</u>.

13        **MS. MIZNER:**  Yes, I think so.  The challenges --

14        **THE COURT:**  Without it being as applied.  It is

15   still the same papers that we have now except that I say

16   paragraph one or is the fact that paragraphs two and three

17   are okay make it fatal to a facial challenge?  That is what

18   I am trying to ask I guess.  As opposed to an as applied

19   claim.

20        **MS. MIZNER:**  Well, first of all, we don't agree

21   that it is okay as to categories two and three.  But

22   assuming that it is, then the challenges that we are

23   bringing to the statute, they are facial -- you can call

24   them as applied to this class of people but they apply to

25   all of the people in that class.  So in --

1        **THE COURT:**  That would be a class of people who are

2   not in the hospital, who are not pending indictment, who

3   have served their time and who otherwise would be on the

4   street.

5        **MS. MIZNER:**  Or are being certified solely because

6   they are in the custody of the Bureau of Prisons.  And so in

7   that sense it's facial in the since that it plays to

8   everybody in that class.

9        These challenges, there are no -- it is not a

10  question of the individual circumstances in which a

11  particular person is being held beyond saying they're in the

12  custody of the Bureau of Prisons.  So that the arguments

13  would apply --

14       **THE COURT:**  Could you have a statute which had a

15  certification that would identify the people who are

16  released, if they think they are going to be predators, have

17  them, order them to be registered every place that they

18  live?  Over and above --

19       **MS. HONG:**  For registration requirements?

20       **THE COURT:**  Yes.  I know there is a registration

21  requirement; but what about the registration requirement

22  that kicks in to trigger right on their release, the same

23  certification procedure that you are talking about, except

24  it is not to keep them in jail, it is to let them go out of

25  jail but with this identification as being a predator?

1          **MS. HONG:**  And it's actually precisely what's

2    required under the Adam Walsh Act, persons who are sexually

3    violent offenders or who have committed certain sex

4    offenses, they're required by federal law to register not

5    only with the federal registry but also comply with the

6    state and local laws.  They're called the Smyrna (ph.)

7    regulations that require registration of federal offenders.

8    So, yes, they can.

9          And United States v. Plotts offers another example

10   where persons are required to do something upon release,

11   meaning they're required under the DNA Act, felons are

12   required under the DNA Act to provide their DNA.

13         I just want to go back to one comment about the

14   facial challenge to that first category of individuals, the

15   persons in the custody of the BOP.

16         Another reason why as applied challenges are

17   typically favored over facial challenges which are uniformly

18   disfavored is because the facts of a particular case will

19   inform the legal analysis.

20         There are certainly individuals who are in the

21   custody of the BOP who are aliens.  For example, it is not

22   contested that Congress has plenary authority to legislate

23   over aliens.  Can Congress legislate and require aliens who

24   are sexually dangerous to others to be civilly committed?  I

25   don't think anyone would challenge Congress's authority.

1    They may challenge substantive due process, due process,

2    whatever it may be; but in terms of the authority question,

3    no one would question whether Congress who has wide-ranging

4    plenary authority over aliens, whether Congress could

5    legislate the Adam Walsh Act as applied to that class of

6    individuals.  Those persons fall within that first class,

7    the first class being persons in the custody of the Bureau

8    of Prisons.

9         Therefore, on its facial challenge, which is the

10   only challenge they have brought here, it's my understanding

11   that in discussions with respondents' counsel they suggested

12   that perhaps in the future as applied challenges may be

13   raised.  But right now all we have is a facial challenge.

14   Under Salerno their facial challenge fails.

15        Respondents also suggest that City of Chicago --

16        **THE COURT:**  Wait.  Let's go back to where we

17   started.  That Salerno standard was called into question by

18   the Morales case; right?

19        **MS. HONG:**  It actually wasn't.  If you look at that

20   section of the opinion, Justice Stevens wrote for two

21   concurrent, or two justices who joined in the reasoning and

22   one justice who concurred in the judgment but not in the

23   reasoning itself.  So three justices were the ones that were

24   questioning whether Salerno was actually the facial test or

25   not.

 1              And subsequently in 2002 -- the City of Chicago v.

 2     Morales was issued in 1999.  Subsequent to City of Morales,

 3     in Sabri, for example, in 2004 the Supreme Court

 4     unquestionably applied the Salerno standard.  Courts since

 5     1999, including the First Circuit, have applied the Salerno

 6     test for facial challenges.

 7              I don't think that one can sort of reasonably

 8     question whether a facial challenge requires a respondent to

 9     show that it cannot be applied, that the statute cannot be

10     applied constitutionally in every circumstance.  And

11     respondents simply failed to do that here.

12              Even if you look at the class of individuals who

13     are within the custody of the Bureau of Prisons, I don't --

14     it's clear under Plotts, it's clear under Perry, it's clear

15     under the Supreme Court's opinion in Salerno that Congress

16     has the authority to prevent danger when it has custody,

17     when it has control over a body of a person who suffers from

18     a mental disease knowing that that person will go out and

19     harm the community.

20              In United States versus Salerno the Supreme Court

21     stated that the government's interest in preventing crime by

22     arrestees is both legitimate and compelling.  Chief Justice

23     Rehnquist at the time wrote for six justices stating that in

24     order to protect the community, the federal government could

25     for persons who it held, that it held under its roofs could

1      commit those persons for the safety of the community.

2           If you look at the dissent, Justice Marshall in a

3      footnote states, Preventative danger -- preventing danger to

4      the community is typically one that is a state goal or a

5      state enactment.  But Justice Marshall in dissent questions

6      why or how the Supreme Court would allow the Congress to

7      legislate for the safety of the community through the Bail

8      Reform Act.  But that's precisely what the Supreme Court

9      allowed in United States versus Salerno.

10          "The government's general interest in preventing

11     crime is compelling," stated the court.  And here that same

12     interest is present.  This is not about the federal

13     government going and plucking off --

14          **THE COURT:**  There is an interest but is there

15     authority under the Constitution?  That is the question.

16          **MS. HONG:**  Yes.  And Salerno answers the question

17     in the affirmative.  Perry answers the question in the

18     affirmative.  Necessary and Proper Clause jurisprudence,

19     going back to M'Culloch, answers the question in the

20     affirmative.

21          Congress has the authority here to proscribe

22     sexually violent conduct and child molestation.  Title 18

23     certainly contains sexually violent offenses as well as

24     child molestation offenses.

25          If Congress has the power to proscribe, Congress

1    has the necessary and proper authority, cabined, of course,

2    by substantive due process concerns, cabined, of course, by

3    procedural due process concerns, but it has the authority to

4    prevent the imminent occurrence of those federal crimes.

5            Here Congress in its legislative wisdom has decided

6    that when it has a person in its custody, persons who have

7    committed multiple rapes, persons who have like

8    Mr. Hendricks, for example, molested hundreds of children,

9    have stated that he cannot control the urge to go out and

10   harm children, that Congress is not yoked by the

11   Constitution from releasing, in releasing those individuals

12   to go harm the community.

13           If Congress has the power to proscribe, it has the

14   Necessary and Proper authority to prevent the imminent

15   occurrence of those crimes.

16           If you look at the federal, their proposed, the

17   notice --

18           **THE COURT:**  Well, does that beg the question -- and

19   if you think you have answered this, forgive me.

20           Does it beg the question does Congress have the

21   power to proscribe the conduct that you described here?

22           **MS. HONG:**  Mm-hmm.

23           **THE COURT:**  Or is that something that is left up to

24   the state?  Is it the states that decide that molestation is

25   going to be criminal activity?  Where is the congressional

1    authority for that?

2         **MS. HONG:** Right.  And Congress has the Commerce

3    Clause power to proscribe sexual misconduct and sexual

4    exploitation of children as it does --

5         **THE COURT:** But that was only -- we went through

6    this.  That is only if it goes in interstate commerce.  I

7    mean, travel in interstate commerce.

8         **MS. HONG:** That is correct.  And because of that --

9         **THE COURT:** Is there any other statute where

10   Congress has said thou shall not do thus and so as a

11   substantive crime?

12        **MS. HONG:** If you look at the Bail Statute, the

13   statute that was examined in <u>Salerno</u> as well as <u>Perry</u>, there

14   Congress has the power and authority to proscribe certain

15   firearms conduct or drug conduct which may also be

16   proscribed by the states.

17        But because Congress had the authority to proscribe

18   that conduct in the first instance under the Commerce

19   Clause, Congress then has the necessary and proper authority

20   to prevent the occurrence of those crimes by holding those

21   persons who have already been in federal custody --

22        **THE COURT:** I can understand that argument.  It is

23   the authority in the first place that you slip over very

24   quickly but I don't know, where is the authority?

25        **MS. HONG:** Yeah.  If you look at, for example,

1    federal gun offenses, those crimes typically include a

2    jurisdictional prong, an interstate commerce requirement, an

3    element that the gun traveled in interstate commerce.

4            **THE COURT:**  Right.

5            **MS. HONG:**  Under the Bail Statute because those

6    crimes may be proscribed, Congress may prevent the

7    individual that has already been arrested from going out and

8    recommitting those acts --

9            **THE COURT:**  I understand what you are saying.  Give

10   me an example of a crime that doesn't have the

11   jurisdictional hook of traveling in interstate commerce.

12           **MS. HONG:**  And, perhaps if I make clear, that the

13   sexual crimes that are proscribed by Congress here, those

14   set forth in 18 U.S.C. Sections 2241 through 45 as well as

15   18 U.S.C. Sections 2251 through 52, those contain those

16   similar types of either interstate commerce hooks or hooks

17   that the crime occurred on federal property or in --

18           **THE COURT:**  So give me one that doesn't.  That is

19   what I am saying.  I can understand the argument that

20   Congress can act to assist the enforcement of a statute

21   which it passed proscribing certain conduct.  So you are

22   going to give me an example but give me one that doesn't

23   have the, not artificial but the procedural jurisdictional

24   hook of interstate travel.

25           **MS. HONG:**  Yes.  If there is --

1          **THE COURT:**  Something that would be typically

2     thought of as being a statute being passed by a Legislature

3     as opposed to Congress.

4          **MS. HONG:**  Yes.  And forgive me, I want to make

5     clear that we're not suggesting that Congress has the

6     plenary Necessary and Proper Clause authority to prevent the

7     occurrence of all crimes, whether they're state crimes or

8     not.

9          What we're suggesting here --

10         **THE COURT:**  What about these crimes?  Let's talk

11    about these crimes.

12         **MS. HONG:**  Yes.  In these crimes, sexually violent

13    crimes and child molestation crimes that Congress has the

14    authority to prohibit are Commerce Clause hooks, there are

15    jurisdictional hooks to these crimes.

16         Congress has the authority under the Commerce

17    Clause to prevent those crimes.  Because Congress has the

18    authority under the Commerce Clause to prevent those or to

19    prohibit those acts, proscribe that conduct, it then has the

20    Necessary and Proper authority to prevent the imminent

21    occurrence of any --

22         **THE COURT:**  Even though the ultimate, the

23    initial -- the predicate authority is based on interstate

24    travel as opposed to something that could be more benign?

25         **MS. HONG:**  Right.  And that's what <u>United States v.</u>

 1    _Perry_ and what the Supreme Court implicitly held in _Salerno_,

 2    which is _Perry_, for example, the court stated that these

 3    individuals had committed certain drug offenses, certain

 4    federal drug offenses or certain firearms offenses.

 5    Congress could nonetheless legislate to protect the

 6    community to prevent those types of crimes even if it is

 7    swept in from state drug offenses, even if it has swept in

 8    some state firearms offenses.

 9         When you have an individual in federal custody, for

10    example, if you have someone in federal custody who tells

11    the warden every day, day in and day out, I can't wait to

12    get out because I can't control my urges to go harm a kid,

13    Congress, if it can proscribe that conduct, if he had

14    committed that crime in interstate commerce, certainly it

15    would be a crime under federal law.

16         Because Congress has the power to proscribe that

17    conduct, it can narrowly draw a class of individuals whom

18    Congress may civilly commit because they suffer from a

19    mental illness, abnormality or disorder that will make it

20    likely that the individual will go out and recommit that

21    sexually violent conduct or child molestation that underlay

22    the federal crimes.

23         **THE COURT:**  Okay.  I think understand your

24    position.

25         Anything else you want to add?

1          **MS. MIZNER:**  I'd just like to go back to the -- it

2     seems to me that the government's notion is that because

3     Congress may past a narrow statute such as one that requires

4     interstate -- that upon transportation in interstate

5     commerce there is a federal offense, that somehow that

6     sweeps in every kind of offense or act that bears any kind

7     of relationship to the narrowly proscribed offense.  And

8     that is not as I read Salerno or Perry what those cases are

9     saying.

10          **THE COURT:**  She is saying if it is sexually

11    related, I think that is the --

12          **MS. MIZNER:**  Right.

13          **THE COURT:**  I may not be quoting her correctly.

14    But she is saying that if there is a statute passed which

15    has an interstate hook which makes it a federal statute,

16    proper for Congress to have enacted, that anybody who is

17    leaving jail can be certified if the evidence supports it,

18    by the warden or whoever does it, as being potentially

19    dangerous violating that law.

20          **MS. MIZNER:**  That's not what this statute says

21    though.  This statute is much broader than that.  This

22    statute does not limit the certification to the likelihood

23    that a person will commit the offenses that are listed in --

24    that are listed in the statutes that she has cited to the

25    Court.  Just as Perry does not say that because Congress

1   could legislate, can legislate certain drug and gun

2   offenses, that a person who is likely to commit any gun or

3   drug offense can be held by the government.

4         What it specifically says is they are limiting it

5   as addressing only danger to the community from the

6   likelihood that the defendant will if released commit one of

7   the proscribed federal crimes.

8         And here this statute 4248 is not linked to the

9   federal crimes that Congress does have the power under the

10  Commerce Clause to enact.  And that that is where it falls

11  short.  It is sweepingly overbroad in that respect.

12        If it were limited to those crimes, we may have a

13  different -- we'd have a different statute and we may have a

14  different set of circumstances in terms of Congress's power.

15  But that's not the limitation.  It is much broader.

16        If you look at the proposed breadth of what the

17  government is calling sexually violent offenses, sexually

18  violent conduct, it goes far beyond the limited federal

19  jurisdiction under the Commerce Clause for the statutes

20  Congress has enacted.

21        **THE COURT:**  Okay.  Anything else?

22        **MS. HONG:**  Yes.  I just want to address that point

23  about Perry.  Of course the statute in Perry provided for

24  the detention of persons for the safety of the community.

25  The statute on its face simply stated that there was a

1    presumption that a person would be held pending trial if the

2    safety of the community would be harmed.

3              There is nothing on the face of the statute that

4    stated that it was the proscription of federal drugs or

5    firearm offenses that was at issue.

6              In United States versus Salerno, again I come back

7    to this case because the Supreme Court's decision and

8    holding there informs why it's important for the federal

9    government, why the federal government has a specific

10   interest in narrowly holding those individuals that it

11   already has custody over and who it knows will go out and

12   harm the community's members.

13             One question that has been asked is is there a

14   limiting principle to this.  If anything can be sort of a

15   Necessary and Proper -- is anything Necessary and Proper to

16   the power to proscribe.  And I think the answer here would

17   be that, Prince, for example, Prince v. United States, the

18   Supreme Court stated necessary and proper causes cabined in

19   effect by other constitutional proscriptions.

20             For example, could Congress legislate to civilly

21   commit kleptomaniacs because it knew that the person had a

22   propensity to go out and commit robberies or steal.

23             Substantive due process, the substantive due

24   process of the Constitution would come in and inform whether

25   Congress could do that or not.

1          Again, could Congress go out and pluck people off

2     the street because it knew that that individual would go out

3     and commit a federal sex offense or a federal child

4     molestation offense?  That may be informed by the Tenth

5     Amendment.  There it's correct, it's the respondents are

6     certainly correct that typically the care for the mentally

7     ill and the care for the mentally infirm is something that

8     is left to the states.

9          In certain circumstances, however, for example,

10    where the federal government has custody over the person's

11    body, actually has withheld that person from society and

12    from harming society, in those circumstances the federal

13    government has an interest not to release persons knowing

14    that they will go out and harm the community.

15         The Tenth Amendment would be a limiting principle

16    to the Necessary and Proper Clause argument.

17         **THE COURT:**  Okay.  Anything else?

18         **MS. MIZNER:**  Well, just going back to the Bail

19    Statute, since that's the, since Salerno and Perry are both

20    dealing with the Bail Statute, I just want to make it clear

21    that if you look at the Bail Statute is the detention

22    hearing -- detention under the Bail Statute is limited to

23    persons who are charged with very narrowly defined offenses.

24         And in Salerno the Court notes that the Bail Reform

25    Act carefully limits the circumstances under which detention

1    may be sought to the most serious of crimes.  And it lists

2    the offenses, the offenses are listed in the statute.

3         So it's not a general we can hold someone who is in

4    federal custody if they are going to be a danger simply

5    because they're in federal custody because they're charged

6    with committing a particular offense.  It has to be tied to

7    that offense.

8         MS. HONG:  And the Court in Perry actually

9    expressly rejected that.  The court stated a short term

10   civil commitment is Necessary and Proper for carrying into

11   execution the powers of Congress, it is not immediately

12   apparent why a long-term civil commitment divorced entirely

13   from Title 18 of the United States Code would not equally be

14   so.

15        The court continued, "The civil commitment for the

16   safety of the community must be analyzed independently of

17   the criminal charge."  That's what the court did in Salerno

18   and that's what the court did in Perry which informs why

19   this statute is a constitutional application and exercise of

20   Congress's authority.

21        And, again, I just want to go back.  Again, this is

22   a facial challenge by respondents suggesting that in no

23   circumstances may Congress have the authority to promulgate

24   the act.  That type of broad challenge simply cannot prevail

25   here.

 1          **MS. MIZNER:**  Your Honor, we're willing to have you

 2     consider it as applied to the class of people who are before

 3     you today, the class of people who are in the custody of --

 4          **THE COURT:**  Well, I don't know if I am going to

 5     change it in the middle of the hearing.  I think if they --

 6     I am not saying what I am going to do anyway, but it may be

 7     that we should focus another day on another challenge.

 8          But I am not going to at this, in the middle of the

 9     hearing change it from a facial to an as applied.  I don't

10     think I am anyway.

11          But let me tell you, thank you very much for a

12     wonderful presentation, both sides, very helpful and you

13     were very well prepared, very professional.  We appreciate

14     it very much.  And I will do the best I can with it.  All

15     right.

16          **MR. SINNIS:**  Judge, can I ask one question, Your

17     Honor, about my two particular clients, just for some

18     guidance from the Court?

19          Mr. McRae and Mr. Graham are D.C. violaters who are

20     in federal custody, based upon the fact they were D.C.

21     violaters when transferred into the Bureau.

22          I intend to brief the issue as to whether this

23     statute applies to these two individuals.  Would it make

24     sense for Your Honor to rule on this and then have a

25     briefing schedule then or should you set a briefing schedule

1    now on this?

2              **THE COURT:**  Why don't we wait.

3              **MR. SINNIS:**  Okay.

4              **THE COURT:**  All right.

5              **MR. SINNIS:**  And as to that, Mr. McRae filed a

6    declaratory judgment pro se.  He is willing to withdraw that

7    today with leave for me to refile it under this direct

8    challenge as it applies to these two individuals.

9              **THE COURT:**  Why don't you do that.  Do it that way

10   so we have a paper record of everything that is being done.

11             **MR. SINNIS:**  Okay.  Thank you, Your Honor.

12             **THE COURT:**  Anything else?

13             All right.  Thank you, everybody.

14             **COUNSEL:**  Thank you, Your Honor.

15

16             (WHEREUPON, the proceedings were recessed at 1:00

17             p.m.)

18

19

20

21

22

23

24

25

C E R T I F I C A T E


        I, Carol Lynn Scott, Official Court Reporter for

the United States District Court for the District of

Massachusetts, do hereby certify that the foregoing pages

are a true and accurate transcription of my shorthand notes

taken in the aforementioned matter to the best of my skill

and ability.



        /S/CAROL LYNN SCOTT


        _____

                    CAROL LYNN SCOTT
                 Official Court Reporter
                John J. Moakley Courthouse
               1 Courthouse Way, Suite 7204
                Boston, Massachusetts 02210
                      (617) 330-1377



**DATE: September 10, 2009**