# United States Court of Appeals
## For the First Circuit

Nos. 09-1949, 09-2005

UNITED STATES OF AMERICA,

Petitioner, Appellant/Cross-Appellee,

v.

TODD CARTA,

Respondent, Appellee/Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before
Boudin and Selya, Circuit Judges,
and Laplante,* District Judge.

Abby Wright and Samantha Chaifetz, Appellate Staff, Civil
Division, Department of Justice, with whom Tony West, Assistant
Attorney General, Michael K. Loucks, Acting United States Attorney,
and Mark B. Stern, Appellate Staff, Civil Division, Department of
Justice, were on brief for petitioner, appellant/cross-appellee.
Judith H. Mizner, Assistant Federal Public Defender, Federal
Defender Office, for respondent, appellee/cross-appellant.

January 15, 2010

---

*Of the District of New Hampshire, sitting by designation.

**BOUDIN**, **Circuit Judge**.  The federal government sought to commit Todd Carta under the Adam Walsh Child Protection and Safety Act, Pub L. No. 109-248, 120 Stat. 587 (2006) ("Adam Walsh Act"). That statute authorizes civil commitment of a person already in federal custody, including one finishing a sentence after a criminal conviction, if the government shows that he is a "sexually dangerous person."  18 U.S.C. § 4248 (2006).  The district court held that the government failed to make the necessary showing; the government now appeals, and Carta cross-appeals claiming that the statute is unconstitutional.

After pleading guilty to child pornography charges in October 2002, Carta was sentenced to five years in federal prison and three years of supervised release.  Three years into his term, Carta requested and was granted a transfer to a federal prison in North Carolina offering a sex offender treatment program.  Carta participated in the program for approximately seven months, but then withdrew without completing the program.

Carta's treating psychologist noted that even within the program, he exhibited problematic behavior: reinforcing the deviant beliefs of others in the program, denying that his behavior was inappropriate and acting impulsively.  Further, Carta dropped out of the program partly because of his inability to curb his sexual interest the program's younger participants, which resulted in restrictions being imposed on his contact with them.

In the course of the program, Carta disclosed details of his sexual and criminal history that prompted the government's invocation of the Adam Walsh Act's commitment procedures (in shorthand, "section 4248"). Carta described his primary sexual interest as children age 12 to 17 and his secondary interest as children age 7 to 11, and admitted to having a large child pornography collection; he usually stored between 10,000 and 20,000 images on his computer and spent 12 to 14 hours daily looking at child pornography prior to his arrest.

Carta further admitted to sexually abusing minors on many occasions, with his youngest victim being a child in diapers. Carta's long history of sexually abusing minors is detailed in the district court opinion, United States v. Carta, 620 F. Supp. 2d 210, 212-14 (D. Mass. 2009), and we draw on it (subject to a few corrections based on our own reading of the record).

> •Between the ages of 11 and 13, Carta performed oral sex on a child in diapers who was no more than three or four years old one time and on the diapered-child's seven-year-old cousin about 10 times; the seven-year-old also performed oral sex on Carta.

> •When he was 15 or 16, Carta shot with a BB gun a similar-aged male when the peer refused to engage in oral sex; later, Carta talked him into oral sex and they engaged in it approximately 10 times over a five year period.

> •At age 21, on multiple occasions Carta engaged in oral sex with his 16-year-old nephew.

•Between ages 28 and 34, Carta committed multiple sexual offenses while following a rock band; among these were offering a 13-year-old boy concert tickets in exchange for oral sex and fondling and masturbating a 17 or 18-year-old male who was passed out from drug use in Carta's van.

•When Carta was 30 or 31, he began sexually abusing a 13-year-old boy, whom he had sexual contact with 30 to 40 times over a four year period and referred to as his "boyfriend."

•At age 33, he engaged in sexual contact on separate occasions with two 16-year-old males and one 16-year-old female, all of whom he met on the Internet.

•When Carta was 39, he met a 17-year-old male who started living with him; on at least one occasion, Carta orally copulated the 17-year-old's younger brother, who was 15 at the time.  Carta also sexually abused a 13-year-old boy he met on the Internet, performing oral sex on him on multiple occasions; one time, Carta convinced the 13-year-old to have "three-way sex" with Carta and the 17-year-old.

On March 7, 2007--two days prior to Carta's scheduled good-time release date--the Bureau of Prisons certified that Carta, who was being held in a federal facility in Massachusetts, was a "sexually dangerous person" and began civil commitment proceedings under section 4248.  Carta moved to dismiss, arguing the statute was facially unconstitutional on multiple grounds, but after a hearing the district court denied the motion.  United States v. Carta, 503 F. Supp. 2d 405, 407 (D. Mass. 2007).  The denial was

without prejudice to an as-applied challenge, which Carta never made.

In February 2009, the district court held a three-day bench trial on whether Carta met the requirements for civil commitment under section 4248. Experts testified on both sides. The government expert, Dr. Amy Phenix, testified that, based on risk factors such as age, frequency of misconduct and lack of success in treatment, Carta would have serious difficulty in refraining from child molestation if released.[1] Dr. Phenix said that Carta suffered from a mental disorder known as "paraphilia not otherwise specified" that was characterized by "hebephilia."

Paraphilia is characterized by the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), a commonly used reference book in the fields of psychiatry and psychology, as follows:

> The essential features of a Paraphilia are recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons, that occur over a period of at least 6 months . . . [and that]

_____

[1]Dr. Phenix's report, like the report of Carta's expert Dr. Leonard Bard, is under seal; but we note that her diagnosis and evaluation of dangerousness did not rest simply on Carta's confession of past incidents but also on his behavior in prison, his statements about his present feelings and a set of standardized evaluative measurements based primarily on correlating characteristics of the individual with statistical data about re-offense.

> cause clinically significant distress or impairment in social, occupational, or other important areas of functioning . . . .

Am. Psychiatric Ass'n, DSM 522-23 (4th ed. 2000). Carta's condition was described by Dr. Phenix as paraphilia not otherwise specified because hebephilia--loosely, sexual attraction to adolescents, Carta, 620 F. Supp. 2d at 217--is not itself an abnormality specifically listed in the DSM nor is it one of the specific examples of paraphilia listed in the DSM. By contrast, pedophilia, sexual attraction to children before puberty, is a listed variety of paraphilia in the DSM. DSM, supra, at 527-28.

Dr. Bard, an expert designated at Carta's request, see 18 U.S.C. § 4247(b), conceded that Carta suffered from "numerous problems" but--based in part on Dr. Bard's own test results-- concluded that Carta would not have serious difficulty in refraining from child molestation if released. Dr. Bard also asserted that hebephilia was not a generally accepted diagnosis in the mental health community, did not fit within the DSM definition of paraphilia, lacked diagnostic criteria and could not be consistently defined; that normal adults may find adolescents arousing; and that articles offered by the government to support a hebephilia diagnosis were not legitimate peer-reviewed research.

In June 2009, the district court ruled that the government had not proved by clear and convincing evidence that Carta was a "sexually dangerous person" within the meaning of the

Adam Walsh Act.  Carta, 620 F. Supp. 2d at 226-27.  Relying on Dr. Bard's reasoning, the district court concluded that Carta's diagnosis of paraphilia not otherwise specified characterized by hebephilia was not a "serious mental illness, abnormality, or disorder" under the statute.  Id. at 222-27.  Because having a defined mental condition is a prerequisite for commitment under section 4248, the court did not reach the separate question of whether Carta would have serious difficulty refraining from molestation if released.  Id. at 229.  We stayed Carta's release pending the government's expedited appeal.

Chapter 313 of the Criminal Code, 18 U.S.C. §§ 4241-4248, addresses competency to stand trial, disposition of those found not guilty by reason of insanity and treatment of those in custody who are found to be suffering from a mental disease or defect.  One provision authorizes, and provides procedures for, id. §§ 4246(a)- (g), continued commitment of individuals in federal custody-- otherwise due for release--where release would "create a substantial risk of bodily injury to another person or serious damage to property of another" by reason of a "mental disease or defect," id. § 4246(a).

Appended, with cross-references to the basic scheme, is a section added by the Adam Walsh Act that addresses civil commitment of "a sexually dangerous person" who is in the custody of the Attorney General or Bureau of Prisons; commitment may

-7-

continue until that person is transferred to state care or "is no longer sexually dangerous to others" or until that danger can be controlled by outpatient care and treatment.  18 U.S.C. §§ 4248(a), (d).  "Sexually dangerous person" and "sexually dangerous to others" are defined, and the former includes the requirements of the latter.  <u>Id.</u> §§ 4247(a)(5),(6).  The combination requires three elements:

> a prior act (or attempted act) of "violent sexual conduct or child molestation";
>
> "a serious mental illness, abnormality, or disorder"; and
>
> a resulting "serious difficulty in refraining from sexually violent conduct or child molestation if released."

Carta does not deny that he has engaged in child molestation in the past, and the district judge so found.  <u>Carta</u>, 620 F. Supp. 2d at 221-22.  Thus, whether the government could commit Carta turned on whether he suffered from "a serious mental illness, abnormality, or disorder" <u>and</u> whether he would have "serious difficulty" in refraining from further child molestation. As already noted, the district judge did not reach the latter question because he ruled the government had failed to show that Carta suffered from the necessary mental condition.

On review, we distinguish between what the statute means, questions of raw fact and the intermediate step of characterizing the raw facts in the terms of the statute thus defined.  The first

issue, statutory interpretation, we review de novo, United States v. Frechette, 456 F.3d 1, 7 (1st Cir. 2006); the second is one of fact-finding, reviewed for clear error, Fed. R. Civ. P. 52(a)(6); and the last is the problem of applying a general standard to specific facts in which some deference is ordinarily accorded the fact-finder, United States v. Jahagirdar, 466 F.3d 149, 156 (1st Cir. 2006).

The district court may have assumed that the statutory concept is delimited by the consensus of the medical community, but this is not so.[2]  Further, a mental disorder or defect need not necessarily be one so identified in the DSM in order to meet the statutory requirement; several state decisions on counterpart statutes have so held.  See, e.g., In re Commitment of Frankovitch, 121 P.3d 1240, 1245 (Ariz. Ct. App. 2005); In re Care and Treatment of Dahl, 167 P.3d 387, 2007 WL 2768036, at *2 (Kan. Ct. App. 2007); Commonwealth v. Starkus, 867 N.E.2d 811, 819-20 (Mass. App. Ct. 2007).  But in the present case the central problem is that there is no conflict between the DSM and the government's position, which the district court appears to have misunderstood.

_____

[2]See Kansas v. Crane, 534 U.S. 407, 413 (2002) ("[T]he science of psychiatry, which informs but does not control ultimate legal determinations, is an ever-advancing science, whose distinctions do not seek precisely to mirror those of the law."); Kansas v. Hendricks, 521 U.S. 346, 359 (1997) (same); see also H.R. Rep. 109-218, pt. 1, at 29 (rejecting for section 4248 a "narrow" approach to what mental conditions trigger the statute and stating that the statute instead adopts "commitment standards substantively similar to those approved by the Supreme Court" in Crane and Hendricks).

Believing this to be the position of other federal courts,[3] the district court rejected hebephilia as a "serious mental illness, abnormality, or disorder," concluding that it does not fit within the DSM category of paraphilia not otherwise specified and is not otherwise found within the DSM. Carta, 620 F. Supp. 2d at 223-24.  The court also considered whether classing hebephilia as a mental disorder was "supported by research in the field of psychology" and whether it was "generally accepted in the psychiatric and psychological community," finding that although there is some dispute in the field, hebephilia is "not generally recognized as a serious mental illness." Id. at 225-26.

The problem with the district court's approach is that paraphilia is expressly a DSM-listed disorder and Carta appears to fall within this category.  The "essential features" of paraphilia are "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors" fixated on a specific "stimuli," which "occur over a period of at least 6 months" and "cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." DSM, supra, at 522-23.  The DSM states that frequent objects of fixation are "nonhuman objects," "the suffering

---

[3]The district court asserted that "[t]he only federal courts to have addressed the diagnosis of hebephilia in sexually dangerous person cases have rejected it as a basis for commitment." Carta, 620 F. Supp. 2d at 222 (citing United States v. Shields, 2008 WL 544940, at *2 (D. Mass. Feb. 26, 2008) and United States v. Abregana, 574 F. Supp. 2d 1145, 1159 (D. Haw. 2008)).

or humiliation of oneself or one's partner," and "children or other nonconsenting persons." Id.  At first blush, one might think that a number of those abused by Carta fall easily within the category of "children or other nonconsenting persons."

But in any case the DSM includes a catch-all category called "paraphilia not otherwise specified" that lists, simply as examples, types of paraphilia, such as fixation on obscene phone calls, specific body parts, feces or urine.  DSM, supra, at 532. Based on Dr. Phenix's report, Carta's past history of sexually abusing minors, his in-prison behavior and his expressed attitudes seemingly justify classifying him as suffering from a paraphilia: he has a decades-long sexual fixation on minors that plainly has "caused significant distress or impairment" in his life.

With one exception, nothing in Dr. Bard's report appears directly to contradict this classification.  The exception--which the district judge noted but did not expressly adopt, see Carta, 620 F. Supp. 2d at 223--is this: in his testimony (rather than his report), Dr. Bard took the position that the term "children" in the phrase "children or other nonconsenting persons," which the DSM uses as an example of a common category of fixations that often underlie paraphilia, refers only to prepubescent children.  He also stated briefly, but without any detail, that he thought most clinicians used the term "children" in this manner.

Dr. Bard reasoned that in describing pedophilia, the DSM specifically refers to "prepubescent" children; but, if anything, the explicit qualifier "prepubescent" used in defining pedophilia would make one think that its omission in the phrase "children and nonconsenting persons" does <u>not</u> exclude young but pubescent adolescents. The idea that the reference to "children" in the opening examples of common fixations automatically and definitively excludes molestation of young teenagers is far from compelling and, in any case, the "not otherwise specified" category remains.

So on this record it would be clear error to say that the DSM definition of paraphilia <u>excluded</u> an intense sexual fixation on young teenagers accompanied by a pattern of conduct such as Carta's. Nor did the district court squarely take this position; instead, its main concern was one of indefiniteness and over-inclusion: the district judge said that paraphilia not otherwise specified should not be stretched to include hebephilia because it would thereby encompass anyone sexually aroused by post-pubescent minors, which given the vagueness of the term hebephilia "could pathologize normal men." <u>Carta</u>, 620 F. Supp. 2d at 224.

Given that some teenagers are sexually mature, it is hardly surprising that the DSM (and the courts) would hesitate to classify any and all sexual attraction to them as abnormal. But Dr. Phenix did not claim that Carta's mental disorder was hebephilia; she said it was paraphilia not otherwise specified, and

the reference to hebephilia merely pointed to adolescents as the target of his fixation.  This does not mean that everyone sexually attracted to adolescents is mentally disordered; rather, it means that one whose urges are so strong as to produce the symptoms and consequences identified in the DSM and exhibited by Carta could be so classified in an appropriate case.

The cases cited by the district judge are not helpful to his ruling.  In Shields, the trial court rejected hebephilia standing alone as "a serious mental illness, abnormality, or disorder," but did not categorically reject the diagnosis of paraphilia not otherwise specified characterized by hebephilia; instead, the district court said it lacked an adequate record to assess the latter diagnosis.  2008 WL 544940, at *2.  In Abregana, the court found that paraphilia not otherwise specified characterized by hebephilia was a mental disorder, but that dangerousness was not established.  574 F. Supp. 2d at 1154.

In sum, the government's position depended not on showing that hebephilia is a mental disorder but on showing that Carta's sexual attraction to teenagers fell within the DSM definition of paraphilia not otherwise specified; Dr. Phenix provided ample reason to conclude that Carta fell within the DSM definition, and nothing in Dr. Bard's report shows why that conclusion is wrong. We add only that it would be unlikely to take Carta outside the statute even if we concluded improbably that he fell outside any

DSM-recognized affliction; as already explained, the reach of section 4248 is not limited to the specific conditions listed in the DSM.

Dr. Bard's report does show that the experts disagree as to Carta's ability to control his sexual urges toward adolescents. The government must prove by clear and convincing evidence not only that Carta has the required mental condition, but also would have "serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6). On the latter issue, Dr. Bard's evaluation favorable to Carta is reasonably detailed and specific, but so is Dr. Phenix's contrary position. Whose analysis is more persuasive remains to be determined on remand.

This brings us to Carta's claims that section 4248 is facially unconstitutional because the statute is not a valid exercise of Congress' authority under the Commerce Clause and because it violates the Due Process Clause of the 5th Amendment and its encompassed equal protection requirement. The Supreme Court has taken under review United States v. Comstock, 551 F.3d 274 (4th Cir. 2009), cert. granted, 129 S. Ct. 2828 (June 22, 2009), to resolve a circuit split over Congress' authority to enact section

4248, and so will likely resolve a portion of Carta's constitutional claims.[4]

Because Carta is being held in custody after his now-expired sentence, this court concluded that the appeal should be expedited because affirmance of the district court ruling would have expedited his release. Given our disagreement with the district court's ruling, we turn to the constitutional issues which, if disposed of in Carta's favor, would provide an alternative ground for his release. In considering Carta's constitutional claims a de novo standard of review applies. United States v. Rene E., 583 F.3d 8, 11 (1st Cir. 2009), cert. denied, 2010 WL 58720 (Jan. 11, 2010).

In United States v. Volungus, No. 09-1596, 2010 WL 46968, (1st Cir. Jan. 8, 2010), we recently rejected the claim that section 4248 exceeded Congress' power under the Commerce Clause, finding that the constitutional power that supports the creation of a federal crime extends, under the Necessary and Proper Clause, to safeguarding the public against the release of an individual shown by clear and convincing evidence to remain a significant danger to the public. Id. at *1, 4-9. On this issue, Carta's brief relied

---

[4]The Fourth Circuit in Comstock held that section 4248 exceeded Congress' authority and so was unconstitutional. 551 F.3d at 276. The Eighth Circuit also ruled on this issue but came out the other way, finding that the statute was within Congress' power. United States v. Tom, 565 F.3d 497, 508 (8th Cir. 2009), petition for cert. filed Aug. 6, 2009.

solely on Volungus' briefing and the <u>Volungus</u> decision is dispositive.

Carta's due process arguments are that the Constitution demands that section 4248 commitment proceedings require a jury trial, proof beyond a reasonable doubt, and additional prior notice and prompt hearing requirements.  But section 4248 imposes civil commitment--Carta does not argue otherwise--and <u>Addington</u> v. <u>Texas</u>, 441 U.S. 418, 427-33 (1979), ruled that proof of future dangerousness in a civil commitment proceeding requires only clear and convincing evidence.  <u>In re Winship</u>, 397 U.S. 358, 368 (1970), applied a reasonable doubt requirement in a civil proceeding incarcerating a juvenile for delinquency, which the Court deemed essentially criminal; but <u>Addington</u> held that civil commitment can "in no sense be equated to a criminal prosecution," 441 U.S. at 428.

It has been argued (we need not decide the issue) that at least the criminal standard of proof should be used under section 4248 to show the required past act of sexual violence or child molestation where it is not embodied in a prior conviction.  <u>United States</u> v. <u>Shields</u>, 522 F. Supp. 2d 317, 331-32 (D. Mass. 2007). But in this case Carta <u>conceded</u> prior acts of child molestation. Even if in other cases a higher standard were required, it could be read into the statute or unconstitutional applications enjoined so

that facial invalidation would be unwarranted.  See Ayotte v. Planned Parenthood of N. New Eng., 546 U.S. 320, 328-29 (2006).

On Carta's jury trial claim, the Supreme Court declined to require a jury in juvenile delinquency proceedings, McKeiver v. Pa., 403 U.S. 528, 547 (1971), and the claim to a jury trial right in civil commitments has been rejected under not only the Due Process Clause, United States v. Sahhar, 917 F.2d 1197, 1206-07 (9th Cir. 1990), cert. denied, 499 U.S. 963 (1991), but also the Sixth and Seventh Amendments, see e.g., Hernandez-Carrera v. Carlson, 547 F.3d 1237, 1256 (10th Cir. 2008), cert. denied, 2009 WL 1982389 (Dec. 14, 2009); Poole v. Goodno, 335 F.3d 705, 710-11 (8th Cir. 2003).  Carta cites virtually no law to the contrary.

Three other due process claims are made.  One is that the key components of section 4248--"serious difficulty in refraining from sexually violent conduct" resulting from a "serious mental illness, abnormality, or disorder"--are too vague to comport with due process. But the criminal law itself is filled with equally imprecise terms (including fraud, insanity and defenses such as entrapment and duress).  These terms are sufficiently explicit to give notice and prevent arbitrary enforcement, and the present statute also passes muster.  See Peterson v. Gaughan, 404 F.2d 1375, 1377 (1st Cir. 1968) (upholding similar state statute).

The second claim is based on the failure of section 4248 to specify that a prompt hearing is required and perhaps--whether

this is requisite is more debatable--to impose some prompt preliminary screening by a neutral magistrate before a substantial period of detention occurs after the sentence has expired.  We cannot say that violations are so likely as to meet the high standard needed to _facially_ invalidate the statute, _McCullen_ v. _Coakley_, 571 F.3d 167, 174 (1st Cir. 2009), and in any event those defects could be remedied by interpolating requirements and remedies where the individual's hearing has been inordinately delayed, _see_ _Ayotte_, 546 U.S. at 328-29; _see also_ _Shields_, 522 F. Supp. 2d at 336-37.  Carta has now had his hearing, did not bring an as-applied challenge against the timing of his hearings and does not on appeal claim prejudice in his ability to present his case.

This does not excuse what may be a pattern in which the government certifies prisoners as sexually dangerous mere days before their scheduled release, thereby guaranteeing that they will be held for an extended period beyond that date even if there is little basis for the charge.  Any such practice is a result of improper administration, not statutory command.  The government deserves fair warning and a modest additional period to frame the necessary regulations limiting the period of detention without a hearing; after that, it is likely to find courts imposing remedies.

Carta's third claim is that section 4248 does not provide adequate notice of the proposed basis of commitment.  Section 4248 requires a responsible government official to provide a certificate

that the target is a "sexually dangerous person" to both the district court and the target.   18 U.S.C. § 4248(a).   The certificate in Carta's case described some of Carta's past acts of child molestation, listed his mental diagnoses and summarized the bases for thinking that he would be dangerous in the future; Carta fails to explain why such a notice is constitutionally inadequate.

Carta's equal protection argument is that section 4248 fails rational basis review because the class of individuals potentially affected by the statute--namely, all federal prisoners--does not bear a rational relationship to the government purpose of incapacitating "sexually dangerous" individuals.   The equal protection argument builds on Baxstrom v. Herald, 383 U.S. 107 (1966), where the Supreme Court disallowed a state commitment statute that made it easier to commit based on mental illness those already in prison than counterpart state residents not so imprisoned.   Id. at 110-11.

But a state, unlike Congress, has a general police power, whereas the federal government's interest and responsibility here stem from the fact that it already has custody of the prisoner.   Volunqus, 2010 WL 46968, at *6-7.   There is no corresponding group of unimprisoned persons subject to its police power, so with respect to the operation of section 4248, federal prisoners and unimprisoned persons are not similarly situated.   See Plyler v. Doe, 457 U.S. 202, 216 (1982).   Thus, far from being

irrational, it is inevitable that the federal government limits the reach of section 4248 to individuals already in its custody.

We uphold the district court's determination that the statute is not facially unconstitutional, conclude that the district court erred in holding that the government failed to establish that Carta met the mental condition element and remand for it to consider whether the requisite dangerousness exists.

It is so ordered.

**--Concurring Opinion Follows--**

**LAPLANTE**, **District Judge**, concurring.  As explained in my recent dissent in United States v. Volunqus, No. 09-1596, 2010 WL 46968, at *9 (1st Cir. Jan. 8, 2010), I have serious concerns about whether the Walsh Act is necessary and proper to the exercise of Congress's enumerated powers.  Since the Supreme Court has already heard oral argument in a case that raises that very issue, see United States v. Comstock, 551 F.3d 274 (4th Cir. 2009), cert. granted, 129 S. Ct. 2828 (2009), I would prefer to wait for the Supreme Court's ruling rather than remand this case now and create potentially unnecessary work for the district court.  Carta will remain in federal custody either way, at least in the short term.

Notwithstanding this preference, I concur fully in the majority opinion because I recognize that Volunqus, which upheld the Walsh Act as a valid exercise of Congress's authority, is now the established law of this circuit.